CORNELIUS SAVAGE and JOHN COCKLE, Respondents, v. HENRY SHERMAN and others, Appellants.

24 307
73 55

*Trustees — right of, to commissions — 1863, chap. 362 — does not apply to accumulations of income — When the fees of a trustee are fixed by an implied agreement — Decree — purchaser from a party to the action is bound by — When one beneficiary cannot prevent the trustee from executing a power of sale.*

Trustees appointed prior to the passage of chapter 362 of 1863, giving not to exceed three commissions to executors when the personal estate amounts to not less than $100,000, are within the equity of that statute, and are entitled, upon an accounting, had subsequent to the passage thereof, to the commissions given by it when the value of the estate vested in them, whether it consists of real or personal estate, or both, amounts to the sum therein named.

Three sets of commissions can be allowed only upon the value of the property received by the trustees from the creator of the trust; they cannot be allowed upon the rents and profits thereof received by them, though such rents and profits exceed in amount $100,000, especially when the said rents and profits have been paid over from time to time in amounts smaller than that named.

The entire management of an estate vested in four trustees was committed to one of them, who charged, in the accounts rendered by him from time to time to the beneficiaries, for his services the sum of five per cent upon the moneys collected and disbursed by him. No objection to this proceeding was made by the beneficiaries or the co-trustees.

*Held*, that upon an accounting the referee properly adopted the amounts so charged as the full measure of compensation to be allowed to the trustees for their services.

After the death of the trustee who had managed the estate, the survivors committed the care and management thereof to the son of one of them, upon the agreement that he was to receive the same compensation as had been received by the former trustee, there being no agreement between the trustees that any further charge was to be made on account of their services:

*Held*, that the referee properly refused to allow the trustees any compensation for their services in addition to the amount allowed to the person so intrusted with the care of the estate.

One who purchases an interest in a trust estate from the heirs of one who was a party to an action brought to determine the validity of the trust, is bound by the decree entered in such action.

Although where a power to sell real estate is given to a trustee, the persons entitled to the proceeds thereof may all elect to take the property itself, and so prevent the execution of the power, the owner of an undivided interest therein cannot prevent a sale when that is desired by the other parties in interest, and is essential to the due division of the property.

APPEAL from an order made at Special Term, confirming the report of a referee on the settlement of the accounts of the trustees of Michael Burnham, deceased.

Cornelius Savage (the elder), John Cockle, Henry Sherman and Harriet Russ were, by a decree made in the above entitled action June 17, 1859, appointed trustees under the will of Michael Burnham, deceased. At that time the trust estate consisted of certain real estate on Pine and William streets, in the city of New York, and the interests of the various beneficiaries were as follows:

Four-tenths of the estate was held in trust for the benefit of Anna A. Sherman, Harriet Russ, Elizabeth Cockle and Ellen Savage, each having a life interest in one-tenth ($\frac{1}{10}$), with remainder over to her children. The remaining six-tenths of the estate had vested and belonged to the following persons, either as purchasers, heirs-at-law, or otherwise, in the following proportions, viz.: Anna A. Sherman, Harriet Russ, Elizabeth Cockle and Ellen Savage were each entitled to nineteen two hundred and tenths ($\frac{19}{210}$) of the entire estate; James M. and Thomas Burnham were together entitled to four twenty-firsts ($\frac{4}{21}$) of the entire estate, and the children of Michael Burnham, the younger, were entitled to the remaining one twenty-first ($\frac{1}{21}$) of said estate.

These vested interests were owned subject to the trusts and powers set forth and established by the decree of June 17, 1859. In 1873 the said James M. and Thomas Burnham sold and conveyed their interest to John M. Pinkney. Upon the appointment of said trustees, Mr. Savage (the elder), upon consent of all parties and upon the express authorization of his co-trustees, took sole charge of the whole trust estate, attended to the leasing of the property, collected the rents, made up and rendered the quarterly accounts to each beneficiary, and attended to the quarterly distribution of the income, and continued to so manage the estate down to February, 1869, the time of his death. During this period Mr. Savage was paid by the trustees five per cent of the rents collected and disbursed for his services in managing the estate. This charge was made with the approval and consent of all parties.

After the death of Mr. Savage, Mr. Washington Cockle managed the estate as agent of the trustees, charging for his services five per cent on the rents received and disbursed.

The trustees, Sherman and Ross, died in the early part of 1879, leaving Mr. Cockle the sole surviving trustee.

In October, 1879, several of the parties interested desiring a distribution of the vested portions of the estate, the surviving trustee, under the power conferred by the decree of June 17, 1859, entered into a contract for the sale of the property for $175,000. Thereafter, on the application of the said trustee to have the accounts of all the trustees examined, and their right to commissions determined, the court appointed a referee to examine and settle the accounts of all the trustees and ascertain their right to commissions. This was done, and the referee, among other things, found and reported:

1. That the trustee, Cornelius Savage, faithfully discharged his duty, and that during the ten years of his management the trustee rendered quarterly accounts to each party in interest.

2. That in his opinion the allowance of five per cent to Cornelius Savage during his management of the estate should be held to cover all trustees' commissions on income during that period.

3. That after the death of Cornelius Savage the surviving trustees were entitled to commissions on the income of the four-tenths of the estate received and paid to the life beneficiaries.

4. As to commissions on principal, that each of the four trustees, or their estates, were each entitled to one-fourth of three half commissions for receiving the estate, and that the surviving trustee was entitled to one-half commission for paying over the estate.

5. That John M. Pinkney was entitled to four twenty-firsts of the estate, and should be charged with his proportion of commissions on principal and the expenses of this proceeding.

The court at Special Term confirmed said findings, and a decree was entered in accordance therewith, from which the petitioner Anna A. Sherman and the said John M. Pinkney have taken this appeal.

*William Fullerton,* for the appellant Pinkney.

*Edward M. Shepard,* for the appellant Sherman.

*Thomas H. Rodman, Jr.,* for the respondent John Cockle.

*W. G. De Witt,* for the respondent Savage.

BRADY, J.:

The respondent Cockle, together with Cornelius · Savage, Henry Sherman and Harriet Russ, were appointed trustees of the estate, concerning which the accounting was had under the judgment recovered on or about the 17th of June, 1859.

The estate at that time consisted of a property known as 47 and 49 William street and 41 and 43 Pine street, in the city of New York, and it appears to have been then of the value of, or about, $125,000.

The accounting took place under an order made on the 18th November, 1879. Before that time three of the trustees so appointed had departed this life. Savage died in 1869, Sherman and Russ in 1879. At the time when the accounting took place the property, which still remained the same, was of the value of, or about, $175,000. On the accounting the referee allowed one-half of three commissions to the trustees for taking charge of the estate left by the testator. This allowance has been objected to as erroneous, for the reason that the trustees became vested with no more than a naked power of sale over the property, and for the further reason that the act authorizing three commissions to be charged upon an estate of this value, was not enacted until after the trustees became vested with their authority over the property.

The first objection is opposed to the judgment under which the trustees were appointed, and which became binding upon all the parties to the present controversy. Before that was entered the will of the testator was made the subject of judicial consideration by the Court of Appeals, and it was there held in terms that a trust, as that was provided for by the statutes of the State, had been created and vested in the trustees, in addition to the general power given for the disposition of the property. (*Savage* v. *Burnham*, 17 N. Y., 561.) And when the judgment which was deemed to be authorized by that decision was entered, a provision of the same nature was inserted in it. By that it was adjudged that the will did create a trust of the whole of the testator's real estate, and that such trust, as well as the general power of sale, would devolve upon the trustees to be appointed under the judgment. The four persons who have been mentioned were appointed trustees under this judgment and by force of its provisions. Not only the power of

sale but the title to the estate seems to have been vested in them, and that, under the rule which has been applied to the determination of the commissions which trustees should receive, was sufficient to entitle them to one-half commission upon the value of this property. (*Wagstaff* v. *Lowerre*, 23 Barb., 209, 226, 227.)

The title as well as the power of the trustees over the property continued in this manner until chapter 362 of the Laws of 1863 was enacted; and by one of the provisions which were then adopted executors and administrators were allowed to charge for their management of the personal estate not exceeding three commissions, where three or more persons were empowered to act in either of those capacities. (Id., pp. 608, 609, § 8.)

While it is true that this act in terms included only executors and administrators, still the statutes which have been enacted for the purpose of regulating their compensation have been so construed as to include within the equity created by their terms, services of a similar nature rendered by trustees in the discharge of their duties. These trustees, at the time when this statute was enacted, were still vested with the same right over this property as they had at the time when they were appointed. No accounting or settlement of their affairs had taken place, but they still continued to discharge the duties which devolved upon them under the appointment made pursuant to the terms of the judgment already mentioned. For that reason they may properly be held to be within the equity of this act and to be entitled to one-half of three commissions for receiving this property, although their rights to it had been acquired before the law was enacted. An act of a somewhat similar nature was passed in 1817 (chap. 251, vol. 4, Laws of New York, 292), and in the construction in the case of *Dakin* v. *Demming* (6 Paige, 95) it was stated as the judgment of the chancellor that it would be proper to apply it to the settlement of accounts made after its enactment, although the services of the personal representative had been performed prior to that time. (Id., 101.)

The same principle was acted upon in the case of *Supervisors* v. *Briggs* (3 Denio, 173), where it was held that the compensation for legal services was that which was provided for by the statute existing at the time when the right to demand it arose.

These authorities and the principle which they sanction appear to settle the right of the trustees to demand the compensation provided for by the act of 1863, for the reason that it took effect while the property was in their charge, and remained unchanged down to the time of the accounting. So far, therefore, as this appeal questions the allowance of three half commissions to the four trustees, it cannot be sustained. They were properly computed upon the value of the estate at the time when it was sold, for the reason that such value entered into the accounting which was had in the case.

It appeared in the case that after the four trustees were appointed the entire management of the business of the estate was committed to Cornelius Savage, one of their number. It continued in that manner until the time of his death in the year 1869. For his services he was allowed the sum of five per cent upon the moneys collected and disbursed by him as one of the trustees. Accounts were rendered to the beneficiaries who were entitled to the proceeds received by him, and in those accounts this charge of five per cent for receiving and disbursing the moneys was always made. No objection was made to it on the part of either of the parties affected by it, and no further claim was made against them or against the funds on account of commissions to the trustees. For these reasons the referee held that the trustees and the parties entitled to receive the moneys had acquiesced in the propriety of this charge, and that it should therefore be made the full measure of the trustees' compensation for those services. For that reason no further compensation was made for commissions for the collection and disbursement of these moneys by the referee in his decision upon this point, and he appears to have been well sustained by these circumstances.

At the time of the decease of Cornelius Savage, the surviving trustees selected Washington Cockle, who was the son of one of their number, to take the place of the deceased trustee.

It appears by the testimony that he did so by the agreement of the parties. His services were to be, and were, performed for the same sum of five per cent that had been reserved by Savage previous to that time, and no understanding existed between the trustees that any further charge was to be made on account of their performance. The property to be managed continued to be the same, and the attention bestowed upon it was simply that which it

had previously received from the deceased trustee. Statements of a similar nature to those which he had made and rendered were made and rendered by this individual, and this charge of five per cent was made and deducted in the same manner for the services which had been performed. They included the entire care and management of the estate, the collection and payment of the rents received from the tenants who were in its occupancy.

All that was done by the deceased trustee was done by this appointee, who was the son of one of the survivors.

The services, care and the responsibility continued to be precisely what it had been while the property was in the hands and management of Savage. In the accounts which were rendered no charge was made for commissions beyond this sum of five per cent, and no intimation whatever was given that any such commissions would be either claimed or expected. The accounts, on the other hand, were made in such a form as to import a complete statement of all the affairs of the estate mentioned in them, and they seem to have been accepted and adjusted upon the basis of the existence of such an understanding. These circumstances are consistent with no other conclusion than that it was the expectation of both parties that the expenses of the management of the trust by Mr. Cockle would remain the same as they had been while it was in the hands of Mr. Savage, and they deprive the charge allowed by the referee for commissions, beyond this sum of five per cent, to the trustees themselves of all rational ground of support. The conduct and acts of the parties indicate no other understanding than that this trust was to be managed for this sum of five per cent, in full of all other claims or commissions. It is true that the services were performed by a person specially selected for that purpose, and in that respect the case differs from the management of the trust made by Mr. Savage. But as the services continued to be the same, the responsibility certainly no greater, and the accounts were rendered in such a form as to indicate it to be the intention to continue the preceding understanding, no difference should be made in the determination as to the commissions on account of this circumstance. So far, therefore, as commissions have been allowed upon the sums collected and disbursed by Cockle, beyond the sum of five per cent charged in his accounts, the decision made by the referee was not warranted and should be reversed.

Even if he had been right in holding that additional commissions might be awarded, the treble commissions allowed by him would not be supported even by the equity of the act of 1863, for they were calculated upon the rents and profits of the estate, which constituted no part of the property left by the testator; they simply resulted from its management and use under the terms of his will, and at no one time amounted to the sum mentioned in the statute. The fact that all the sums collected and disbursed, as rents received, exceeded that amount did not entitle the trustees to treble their commissions. The amounts from time to time received and disbursed were far below the sum required for the purpose of justifying additional commissions, and those only could be charged upon them which were legally apportioned to the amounts at the time collected and disbursed. (*Matter of Kellogg,* 7 Paige, 265.)

If commissions beyond five per cent reserved under the authority of the trustees could be charged, clearly they could not be so extended as to include the commissions allowed by the referee. For the reasons already stated the five per cent allowed both to Savage and Cockle must be regarded as a legal and proper charge for the services which were rendered. It was so long acquiesced in by the trustees, as well as persons who were the recipients of the money, as to constitute satisfactory evidence that they all assented to the propriety of the arrangements which had been made, and the determination of the referee as to commissions upon rents collected and disbursed should be modified so as to conform to the requirements of the understanding which it is fair to presume existed upon this subject.

The appellant Pinkney has objected that he should not be affected by any of the proceedings had upon this accounting for the reason that he was not a party to the original action, and that the power of the trustees over the interest conveyed to him had been determined by means of that conveyance.

He took this title from the two children of one of the sons of the testator. This son was a party to the action in which the judgment was recovered declaring the construction of the will. By acquiring his title to a portion of the estate in this manner he became subject to the judgment so far as it affected that title; for he stood in privity with the person who himself was a party to the action and

had been concluded by its determination. Upon that subject it has been held that judgments, decrees, and awards are binding not only upon the parties to them, but also upon those who stand in privity with them, and the grantee sustaining that relation to a party is equally estopped by the judgment or decree recovered against him, and qualifying or affecting the nature of his title. The reason of that is, that he holds by a derivative title and cannot be in a better situation than the party from whom he obtained his right. (*Campbell* v. *Hall*, 16 N. Y., 575, 578, 579 ; 1 Greenl. on Ev. [12th ed.], § 523 ; *Smith* v. *Smith*, 79 N. Y., 634; *Campbell* v. *Rankin*, 99 U. S. Sup. Ct., 261.)

As he had become bound in this manner by the judgment to the extent of the interest acquired by him from one of the parties to the action, it was proper that he should be made a party to the accounting, for the power of sale which had been given to the trustees by the terms of the will included the interest which had been conveyed to him. The order requiring the parties to appear was served upon him, and he appeared in the proceeding. So far as the referee can be sustained in his determination he was bound by what took place.

The fact that the interest in the property which was conveyed to him was included within the terms of the power given to the trustees, éntitled them to sell it in the proper exercise of their authority over the property. Where a mere power of this description over property exists, no doubt is entertained as to the right of the persons entitled to the proceeds to elect to take the property itself, and in that manner to prevent the execution of the power. But the facts do not present a case within the operation of this rule, for the conveyance to Pinckney included but a small part of the estate affected by the power. He acquired by his deed the right only to four twenty-first parts of the property. The residue was owned by other persons who made no objection to the sale by the surviving trustee so long as they did not consent to take the property itself instead of its proceeds. The purchaser of this relatively small proportionate interest could not by means of his determination alone oblige them to do so. It is clear that upon a sale of property of this description the price would be enhanced by selling it as a whole, and the persons entitled to be benefited by the exer-

cise of the power providing for such a sale cannot be deprived of their right to insist upon it, because the owner of another undivided interest may be better satisfied to hold it, relieved of the power created for its sale. (*Reed* v. *Underhill*, 12 Barb., 117; *Garvey* v. *McDevitt*, 72 N. Y., 556, 563; *Prentice* v. *Janssen*, 79 id., 479, 485.)

As the sale was required to be made for the purpose of properly dividing the property between those who were entitled to participate in its division, it could not be prevented simply because it was not attended with the approbation of Pinckney. The power of sale included the interest conveyed to him, and it was properly executed by a disposition of the entire property. Out of its proceeds the sum of $33,333.33 were paid to him as the equivalent of the interest conveyed to him by his deed. But in the settlement with him no charge was made for the proportion of the commissions which should have been borne by the sum received on his account. The referee in his adjustment has now made such a charge, and Pinckney has been ordered to repay the proper amount for the purpose of discharging this obligation, so far as commissions were properly chargeable to his interest, under the considerations already mentioned on this subject. The report and the order so far were certainly right.

The case is not to be disposed of under the authorities relating to the recovery of money which has been paid by mistake. This is not a proceeding of that nature, but one the object of which is to secure an equitable adjustment of the rights of the parties to it, and it would certainly be inequitable to allow him to retain in his hands the moneys which have been inadvertently paid to him and which should have been appropriated to the discharge of a different obligation.

No other objections have been presented which require to be considered for the purpose of disposing of these appeals.

The order made should be modified so as to reject the commissions allowed upon the rents collected by Cockle as the appointee of the trustees, and as so modified it should be affirmed.

Davis, P. J., concurred.

Present — Davis, P. J., and Brady, J.

Order modified as directed in opinion.