## Dakin and others *vs.* Demming and others.

A surrogate has no jurisdiction to cite the personal representatives of a deceased executor to account before him as the representatives of the first testator, when none of the effects of such testator came to their hands in that character.

But upon the application of a person who as a legatee or distributee of the first testator is a creditor of the deceased executor, the surrogate has authority to cite the representatives of the latter to account for the estate of their own testator or intestate; and upon such accounting the surrogate is authorized to liquidate and determine the amount of the claim against the estate of such testator or intestate as the representative of the first testator.

Where the surrogate has not jurisdiction of the subject matter of the suit or proceeding before him, no assent or submission of the parties can give him such jurisdiction. But where the objection to the jurisdiction is not taken before the surrogate, but is made for the first time in the appellate court, the appellant will not be allowed costs upon the reversal of the sen-

tence or decree of the surrogate, unless the same is found to be erroneous upon the merits also.

Where the general guardian of an infant settles with the executors or personal representatives of the decedent for a legacy or distributive share of the estate due to his ward, the settlement is so far conclusive upon the infant when he arrives at full age, as to throw upon him the burthen of showing that there was error in the account upon which such settlement was made.

The statute allowing to executors, &c. upon the settlement of their accounts, a compensation for their services applies to all settlements made after the passing of the original act, although the services had been performed before. And in cases coming within the statute, the surrogate has no discretion to refuse to allow to the executor or administrator the commissions established for such services.

April 19.     THIS was an appeal from a decree of the surrogate of the county of Oneida.    The appellants were the executors of Jedediah Sanger, deceased, who was the surviving executor of David Demming, who died in 1809.    Demming, by his will, bequeathed to his adopted daughter, Joanna Demming, and to her two children, certain personal property particularly specified in his will, and made them his residuary legatees of the personal property not otherwise disposed of by the will; and he also bequeathed to his executors all his notes of hand, except those due from his brother, to be held by the executors *in trust* for the use and benefit of Joanna Demming and her two children, excepting thereout so much as might be sufficient to defray his funeral expenses and to pay his just debts.    The personal estate, exclusive of the specific legacies to others and the notes and cash of the testator, were inventoried at $940,57; of which the general guardian of the two infant children of Joanna Demming received from the executors $624,86, about two thirds thereof in specific articles, and at the inventory prices, shortly after the death of the testator.    The notes of the testator, exclusive of those specifically bequeathed to the brother of the testator, and those which were marked as bad upon the inventory, were inventoried at $531,37, of which amount one note of $16, was marked as doubtful.    The cash of the testator on hand at the time of his death, was $141,18, making with the good notes $656,55.    The amount paid out for debts and funeral charges and the expenses of

administraton, as allowed by the surrogate, exclusive of any commissions or other allowance to the executors for their time and trouble, was about $368,39. And on the 9th of October, 1816, the guardian of the two children of Joanna Demming, received the executors notes of hand, due to the estate, to the amount of $196,01 ; and he gave his receipt therefor, declaring it be in full discharge of the notes and property willed to the executors in trust for the use and benefit of such infant children. In April, 1832, the two children of Joanna Demming cited the executors of Sanger to account before the surrogate, for the personal estate of Demming which came to the hands of the executors of Demming, or either of them. The surrogate thereupon proceeded to take an account of the estate of Demming ; and by charging the executors with some of the notes inventoried as bad, and with interest on the notes, and making no allowance to them for interest on the notes which were delivered to the guardian, beyond the nominal amount of such notes as mentioned in the receipt, and allowing nothing to the executors for their services or commissions, he found a balance due to the petitioners of $235 ; which sum together with $37,37½ costs, the executors of Sanger were decreed to pay out of the estate of Sanger. From this decree the executors appealed to the chancellor.

*H. Denio*, for the appellants.

*T. Jenkins*, for the respondents.

THE CHANCELLOR. There is not the least reason for supposing that any of the effects of Demming's estate ever came into the hands of the appellants as the executors of Sanger, who was the surviving executor of Demming. The surrogate, therefore, had no jurisdiction or authority to cite them to account before him as the representatives of the estate of Demming ; although Sanger, who was the surviving executor, died before the revised statutes had deprived the executor of an executor of the right to administer upon or control the estate of the first testator. But

the surrogate has an unquestionable right, upon the application of a legatee of the first testator, who as such legatee is a creditor of his executor, to cite the personal representatives of such executor to account for the administration of the estate of their own testator or intestate. (2 *R. S.* 92, § 52. *Idem*, 116, § 18.) And upon the final settlement of the accounts of that estate, the surrogate is authorized to determine and liquidate the amount of the claim of the legatee against the estate of such testator or intestate as the representative of the first testator; whether such claim was against him in his character of executor, or merely as a trustee under the will of the first testator. (*See* 2 *R. S.* 95, § 71.) It is very evident, however, that the proceedings in this case were not instituted by the respondents for the purpose of calling the appellants to account for their administration of the estate of Sanger, and to obtain a payment of a claim in their favor as the creditors of his estate. It was strictly a proceeding to compel the executors of Sanger to render an account of the administration of the estate of Demming by the executors of that estate. And it was so understood, both by the surrogate and the parties; for the legatees of Demming, and not those of his deceased executor Sanger, were the persons who were cited to attend upon the final settlement of the account. Such a proceeding was improper and wholly unauthorized, if the account of Sanger's estate was to be settled as upon an application of the petitioners as his *creditors*. And the surrogate has taken an account of the administration of the estate of Demming only, and has decreed the payment of the amount found due, upon that accounting, out of the estate of Sanger in the hands of his executors; but without making a single inquiry for the purpose of ascertaining whether the estate of Sanger was sufficient to pay all his debts, or even the amount of this decree. The surrogate having proceeded without jurisdiction, his decree is erroneous, and must be reversed on this ground, even if his decision was right on the merits of the case as presented before him. Although this objection to the jurisdiction of the surrogate does not appear to have been urged before him, still if the court had

not jurisdiction of the subject matter of the suit between these parties, no assent or submission of the parties could give it such jurisdiction. *Abat* v. *Songy's estate*, 7 *Mart. Rep.* 274. *Coffin* v. *Tracy*, 3 *Caines' Rep.* 129. But as the objection to the jurisdiction of the surrogate is made for the first time in the appellate court, I should not be disposed to give costs to the appellants, in a case where the costs upon the appeal are in the discretion of the court, as in this case, (2 *R. S.* 613, § 2,) if the decision of the surrogate was right upon the merits; which appears to be the only question that was actually presented by the parties for the con-·sideration of the judge *a quo*. I shall therefore proceed to consider that question, in reference to the costs upon this appeal.

From the receipts which were given to the executors of Demming, by the general guardian of the appellants who were then infants, I am satisfied that the executors fairly accounted with such guardian for the shares of the personal estate, exclusive of the notes and cash of the decedent, which belonged to the infants; and that the surrogate after the lapse of twenty-three years, should not have opened that account, although the nominal amount of the specific articles delivered to the guardian, at the inventory prices, differed between two and three dollars from two thirds of the whole amount as stated in the inventory. It appears from the receipt which was taken for victualling the appraisers, that the inventory must have been made out by them as early as the third of October, 1809; and it would not be surprising if some trifling article of the clothing, to the value of two or three dollars, had been applied to their use, or lost or destroyed without any fault of the executors, between that time and the 25th of December, when the inventory was sworn to, and when the last receipt of the guardian for their share of the specific articles was given. I am perfectly satisfied, therefore, that the executors of Demming faithfully discharged their duty in respect to this part of the property at least; and that it was the intention of the guardian to receive the articles mentioned in his two receipts of the 21st and 25th of December, 1809, in full for

1836.

Dakin
v.
Demming.

the two thirds of the specific articles of personal property bequeathed to his wards. The nominal amount of notes included in the receipt of the new guardian of the infants, in October, 1816, exceeded by a few dollars, the share of the infants in the good notes and the cash, as orginally inventoried after deducting the amount paid for debts and funeral expenses, &c. as allowed by the surrogate. As the interest was not cast upon the notes in the original inventory, it may be fairly presumed that the notes when turned out to the guardian, for the benefit of the infants, were taken in the same manner, and that the amount actually due on such notes, including the interest thereon, exceeded the nominal amount thereof, as mentioned in the receipt. Again ; the receipt of the guardian was expressed to be in full for the notes and property bequeathed to the executors in trust for the benefit of the infants. It was evidence, therefore, of a settlement between the executors and the guardian, as to this part of the estate of the testator ; and such a settlement was so far conclusive upon the infants, when they became of age, as to throw upon them the burden of proving that there was error in the account upon which such settlement was made. The surrogate was clearly wrong in presuming that the notes of J. Whitney, which were inventoried as bad, had actually been collected by the executors, from the mere fact that they attempted to collect them and were afterwards compelled to pay the constable's fees out of the estate. The fact that the constable called upon the executors about a year after the judgment was rendered, for the payment of his fees, and that by the justice's certificate, the judgment appeared to be standing in full force, is pretty strong presumptive evidence that the defendant therein was unable to pay ; as he appears to have been at the time of taking the inventory. If the judgment was actually collected, or collectable, the respondents, who were attempting to impeach the settlement made between their guardian and the executors sixteen years before, were bound to establish the fact by proof less equivocal than the mere payment of a constable's fees for serving a summons. And if it were necessary to sup-

port the settlement made by the guardian, after such a lapse. of time, I think it might be fairly presumed that the note mentioned as doubtful, or even that some of those inventoried as good were not collectable, or were not in fact due. As the respondents, when they arrived at age, thought proper to wait until after the death of the surviving executor before they instituted this proceeding to open an account which had been settled by their guardian many years before, they were at least bound to call upon that guardian, if living, or to show by a reference to the accounts of his guardianship, if he was dead, the amount actually due for principal and interest on the notes belonging to the estate of Demming, which were received by him on account of their share of such estate.

The settlement between the executors and the guardian was before the passage of the act of April, 1817, authorizing the court of chancery to make an allowance to executors, administrators and guardians, upon the settlement of their accounts, for their services in the discharge of their trusts. Such an allowance, therefore, would not be proper in an account which was liquidated and finally settled at that time. But the statute was retrospective in its operation, and was intended to embrace cases where the services had been performed before the passing of the statute if the settlement of the account took place afterwards; and such, I believe has been the uniform construction of the statute. If the surrogate, therefore, considered the settlement made with the guardian in 1816, as a nullity, and that the executors were bound to account for the whole estate which had come to their hands according to the inventory, crediting them only with such sums as had been paid by them to the guardians from time to time, he should at least have allowed the executors their commissions as fixed by the chancellor under the statute. Indeed the statute under which the surrogate supposed he was proceeding to take this account, is imperative that he shall allow the personal representatives such commissions; and this court has recently decided that the surrogate has no discretion on the

1836.

In the matter
of the Receiv-
ers of the
Globe Ins. Co.

subject. (*Halsey* v. *Van Amringe, April 5th*, 1836, *on appeal from the surrogate of New-York.*)(a)

Upon every view which I have been able to take of this case, therefore, I am satisfied that the sentence appealed from was erroneous in substance, as well as on account of the want of jurisdiction. And it must be reversed with the costs of this appeal, to be paid by the respondents.

(a) Ante, p. 12.