The petitioner resides in this state and has subjected himself to the jurisdiction of this court, the trustees against whom the proceeding is brought are within the jurisdiction of this court, and the will under which the petitioner claims to be entitled to the legacy was probated by this court.

[2, 3] In order to determine the right of the petitioner to the entire income of the trust fund mentioned in the codicil it is necessary for this court to determine whether the decree of the district court of Nevada is binding upon this court, and for this purpose to inquire whether that court acquired such jurisdiction over Julia Miller as would, under the decisions of the courts of this state, justify this court in regarding the said decree as valid and binding for the purpose of this proceeding. The papers before the court upon this application show that Oscar Clark Miller and Julia A. Miller were married in the state of New York, that they continued to reside here for some time after their marriage, that subsequently Oscar Clark Miller abandoned his wife and became a resident of Nevada, that Julia Miller never became a resident of that state and was never personally served with process within that state in the divorce action brought against her by her husband, and that she did not appear in that action. Personal service of process was made upon her in the state of New Jersey. From these facts it is clear that the district court of Nevada never obtained jurisdiction of Julia A. Miller, and that the decree of divorce granted by that court to Oscar Clark Miller on the 23d day of December, 1913, will not be recognized by the courts of this state. Jones v. Jones, 108 N. Y. 415, 15 N. E. 707, 2 Am. St. Rep. 447; Winston v. Winston, 165 N. Y. 553, 59 N. E. 273; Tysen v. Tysen, 140 App. Div. 370, 125 N. Y. Supp. 479; Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1.

As the courts of this state will not recognize the validity of the decree of divorce granted to Oscar Clark Miller by the district court of Nevada, it follows that in so far as the present proceeding is concerned Julia Miller is still the wife of Oscar Clark Miller, and the trustees may in their discretion pay the whole or any part of the income of the trust fund to her.

The petitioner, therefore, is not entitled to an order directing the trustees to pay to him any part of the income from the trust fund.

Application denied.

---

## In re CHENERY'S ESTATE.

(Surrogate's Court, New York County. March 18, 1915.)

1. GUARDIAN AND WARD ⬤⟞151—ACCOUNTING—GUARDIAN'S COMMISSION.
   Commissions must be granted a guardian in accordance with the law in force at the time of accounting.
   [Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. § 501; Dec. Dig. ⬤⟞151.]

2. GUARDIAN AND WARD ⬤⟞151—ACCOUNTING—GUARDIAN'S COMMISSIONS.
   Under Code Civ. Proc. § 2753, providing that a guardian, required to pay over income, and who does so, rendering an annual account, shall be

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

allowed the same commission on the income as he would be allowed upon principal on a judicial settlement, and that, if he does not render such annual account, he shall be allowed upon his judicial settlement his commissions upon the total income then payable to the beneficiary, where a guardian of an infant had paid over none of the income of a trust fund to the infant, it being held for accumulation, it was not entitled to commissions upon the income received each year, but should be allowed commissions upon the gross income received and ready for payment to the beneficiary at the time its account was rendered.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. § 501; Dec. Dig. ☞151.]

Petition on accounting by the Equitable Trust Company, as guardian of Fuller Chenery, an infant, for allowance of its commissions. Completion of decree directed in accordance with opinion.

Sullivan & Cromwell, of New York City, for petitioner.

FOWLER, S. The Equitable Trust Company, as general guardian of Fuller Chenery, an infant, has filed its account, and asks that the surrogate allow it commissions upon the annual income from the trust fund as if such income were paid out each year for the use of the infant. The guardian was directed to accumulate the income for the benefit of its ward. None of the income has been paid to the infant. The disbursements of income made by the guardian were for personal taxes and counsel fees paid to counsel for the guardian.

[1] Commissions must be granted in accordance with the law in force at the time of the accounting. Naylor v. Gale, 73 Hun, 53, 25 N. Y. Supp. 934; Whitehead v. Draper, 132 App. Div. 802, 117 N. Y. Supp. 539.

[2] Section 2753 of the Code of Civil Procedure provides that:

"If * * * a * * * guardian, is required to receive income and pay over the same, and such * * * guardian pays over said income and renders an annual account to the beneficiary of all his receipts and disbursements on account thereof, he shall be allowed, and may retain, the same commission on the amount so accounted for as he would be allowed upon principal on a judicial settlement."

In order to entitle a guardian to commissions on the annual income of the trust fund, it must appear, not only that the guardian has filed an annual account, but that the income has been paid over for the use of the ward. The second clause of the paragraph of section 2753, from which the above quotation is taken, provides that:

"If he does not render such annual account, he shall be allowed, upon his judicial settlement, his commissions upon the total income from any money or property then payable to such beneficiary."

In the first clause it is provided that he must not only render an annual account, but also pay over the income; in the second, if he does not render *such an account,* he will be entitled only to commissions upon the entire amount then payable to the beneficiary. I am inclined to think that the words "such an account" refer to the annual account and paying over of annual income provided for in the first clause, and that unless such annual account is rendered and annual

income paid over to or for the use of the beneficiary, the guardian is not entitled to commissions upon the income received each year, but that commissions should be allowed upon the gross income received and ready for payment to the beneficiary at the time he renders his account. The Equitable Trust Company, therefore, will only be allowed commissions upon the entire amount of income received by it from the trust fund for the benefit of the infant. Costs taxed.

Complete decree by inserting appropriate amounts.

(89 Misc. Rep. 596)

PEOPLE v. EASTMAN. •

(Court of General Sessions, New York County. March 16, 1915.)

1. LIBEL AND SLANDER ⚖152—PROSECUTION—INDICTMENT—"LIBEL."

Under Penal Law (Consol. Laws, c. 40) § 1340, defining libel as a malicious publication by writing, printing, picturing, etc., which exposes any person to hatred, contempt, ridicule, or obloquy, an indictment which charges that the defendant published a malicious libel, consisting of a picture, which was set out in the indictment, is sufficient, without alleging that it exposed the person represented to hatred, contempt, ridicule, or obloquy.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 417, 419–424, 426, 427; Dec. Dig. ⚖152.

For other definitions, see Words and Phrases, First and Second Series, Libel.]

2. LIBEL AND SLANDER ⚖152—PROSECUTION—INDICTMENT—"REPRESENTATION"—"FIGURE."

In an indictment for libel, an allegation that a man shown in the picture alleged to be libelous is a representation and figure of N. is an allegation that the picture was a recognizable likeness of N., since a "representation" is the act of representing to the mind or view, the act of portraying, depicting, or exhibiting, as in imagination, in a picture, or on the stage, portrayal, and "figure" is defined as the artificial representation of a form, as in sculpture, drawing, or painting, especially the human body represented by art of any kind, and Code Cr. Proc. § 282, requires the words of an indictment, except those defined by law, to be construed in their usual acceptation in common language.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 417, 419–424, 426, 427; Dec. Dig. ⚖152.

For other definitions, see Words and Phrases, First and Second Series, Representation.]

3. LIBEL AND SLANDER ⚖141—PROSECUTION—APPLICATION OF LIBEL.

The fact that the explanatory article printed on the same page with the picture did not mention N.'s name, is no defense to the prosecution, if the likeness was that of N., since the libel charged was the publication of the picture, not the article.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 402; Dec. Dig. ⚖141.]

4. LIBEL AND SLANDER ⚖152—PROSECUTION—INDICTMENT—PUBLICATION.

Under Penal Law, § 1343, providing that, to sustain a charge of publishing a libel, it is not necessary that the matter complained of should be seen by another, but it is sufficient that the defendants knowingly displayed it or parted with its custody under circumstances which exposed it to be seen or understood by another person than himself, an indictment for libel by the publication of a picture, which did not state the

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes