Matter of the Judicial Settlement of the Account of FLORENCE B. POTTER, WILLIAM C. DURRIN and JOHN B. CLARK, as Testamentary Trustees under the Last Will and Testament and Codicil Thereto of WILLIAM E. ADAMSON, also Known as WILLIAM E. WARD, Deceased.

(Surrogate's Court, Kings County, January, 1919.)

Commissions — testamentary trustees — accounting — trusts __ when only one full commission allowed — Code Civ. Pro. § 2753.

The right of testamentary trustees to commissions is governed by the law in force when their account is settled.

Testamentary trustees assumed the trust respecting certain real estate before section 2753 of the Code of Civil Procedure, as to trustees' commissions, was amended in 1916, to read as follows: " The value of any real or personal property, and the increment thereof, received, distributed or delivered, shall be considered as money in making computation of commissions." Upon the judicial settlement of their account, since said amendment, it appeared that there was a direct devise of the real

8

Surrogate's Court, Kings County, January, 1919.  [Vol. 106.

estate with respect to two residuary trusts, while two legacies of fixed sums in trust were specifically charged upon the real estate, with direction for their provision out of the real estate, should the personalty prove insufficient, and the trustees were directed to use or hold all or such part of the real estate as they might deem necessary for the purpose of completing the funds bequeathed in trust.  The accounting parties though they held more than $395,000 of the estate were trustees of six separate trusts, no one of which amounts to more than $69,000.  *Held,* that under section 2753 of the Code of Civil Procedure as amended, the test of the size of the estate or fund is the amount found in each fund separately accounted for, the value of the estate to be taken as of the time of its receipt by the trustee, with result that the trustees herein are entitled to one commission to be divided among them, viz., one full commission on all moneys received and disbursed, and one-half commission on all the estate or funds received by them, whether personal or real, such allowances to be borne proportionately by the several trusts.

PROCEEDING upon the judicial settlement of the account of testamentary trustees.

Peale & McLaughlin, for trustees.

Coombs & Wilson (Robert H. Wilson, of counsel), for objectors.

KETCHAM, S.  The trustees claim one-half commissions on the value of real estate embraced in their account, on the ground alleged that such real estate has been " received " by them.  To this, objection is made that the statute passed May 19, 1916, which, if applicable, would justify the claim, does not apply, and that the rule which controls the present accounting is to be found in the statute as it was when the trust came into operation.

Prior to May, 1916, section 2753 of the Code provided as to trustees' commissions as follows: " The value of any real or personal property  *  *  *  dis-

tributed or delivered, shall be considered as money in making computation of commissions."

Upon the date last named, the section was so changed that it was provided as follows: " The value of any real or personal property, and the increment thereof, received, distributed or delivered, shall be considered as money in making computation of commissions."

The trustees assumed the trust respecting the real estate as to which they now account before the amendment of 1916, *supra.* Assuming for the moment that the real estate was " received " the only question is whether the commissions are to be computed according to the law as it now is.

The objectants insisting that the statute as it now is does not apply, invoke the statement of the law, found in some cases, to the effect that " it takes a clear expression of the legislative purpose to justify a retroactive application." This general canon of construction is subject to an exception as broad and distinct as the rule itself. This exception is that the legislature has the right to pass laws changing the form and method of procedure, and that such changes affect cases and conditions arising before the change in the absence of words of exclusion.

The rule, then, is that it takes a clear expression of the legislative purpose to justify a retroactive reading of a law only when the enactment tends to destroy or impair a vested right, or to give a right when none existed, or to impose a liability not previously known; but that legislation which affects only the remedy or the procedure embraces a pending action or a condition which came into being before the passage of such legislation, unless words of exclusion are found in the statute. Acts relating to procedure are therefore not retroactive in the sense that they relate back to and modify a pre-existing state of right. Rather

are they prospective since they apply only to a ruling to be made in the future, albeit with respect to trans-actions in the past which come up for adjudication in the future.

In the case at bar, no right to commissions accrued at the time of the receipt of the real estate. That trus-tees may properly take their commissions at the time of disbursing income affords no basis for the thought that they can of their own motion pay to themselves one-half commissions upon principal received.

Hence, it appears that as to the principal of this trust, whether real or personal, the only right to com-missions for its receipt comes into sight for the first time when the decree is made awarding such commis-sions. Until that time they were but an expectancy, which was wholly subject to procedure for a judicial award.

That the allowance of commissions is a mere mat-ter of procedure is demonstrated by the following reference to section 2753 of the Code. It is, " On the settlement of the account of any * * * testamentary trustee * * * " that " the surrogate must allow to such * * * testamentary trustee for his services " commissions at the rates prescribed. The settlement of the account can only be had in a proceeding, and the definition of " judicial settlement," which for the present purpose is the same thing as " settlement," " signifies a decree of the surrogate's court " (Code, § 2768, subd. 8), and in section 2753, the two phrases, " judicial settlement " and " settlement," are used interchangeably and with the same meaning. Only in a proceeding can the surrogate allow the commis-sions which, according to the statute, he must allow. Again, the value of any real or personal property, etc., shall be " considered " in making computation of com-missions. This means that such elements must be

" considered " by the surrogate as a part of the determination of a proceeding. So, too, all the features of adjustment and apportionment of commissions in the various relations prescribed in the statute are to be considered and adjudged by the court obviously in the decree.

This detail of the section seems necessary to make it manifest that the right to commissions in any case, except that of the disbursement of income, has no existence until a proceeding commenced has resulted in a decree, and that, therefore, it comes into being only as a matter of procedure. There is no more right to these commissions than there is to referees' fees, costs and allowances to litigants, commissions to receivers, or any other form of award which, whenever earned, does not accrue before judicial determination.

In *Dakin* v. *Demming,* 6 Paige Ch. 95, the appeal was from a decree of the surrogate, which, among other things, denied commissions to executors accounting for the acts of a deceased executor, who, in 1816, had made a non-judicial settlement with the guardian of infant beneficiaries. Chancellor Walworth held that it was imperative upon the surrogate to allow the commissions according to the statute passed after the executor had concluded his services, saying: " The settlement between the executors and the guardian was before the passage of the act of April, 1817, authorizing the court of chancery to make an allowance to executors, administrators and guardians, upon the settlement of their accounts, for their services in the discharge of their trusts. Such an allowance, therefore, would not be proper in an account which was liquidated and finally settled at that time. But the statute was retrospective in its operation, and was intended to embrace cases where the services had been performed before the passing of the statute if

the settlement of the account took place afterwards; and such, I believe, has been the uniform construction of the statute.''

In *Savage* v. *Sherman,* 24 Hun, 307, the General Term of the first department held that the commissions to trustees were to be regulated by an act passed after the rendition of their services, and Brady, J., for the court, citing *Dakin* v. *Demming, supra,* and *Supervisors of Onondaga* v. *Briggs,* 3 Den. 173, reached the conclusion that in the settlement of accounts a statute passed after the performance of services by a trustee was properly applicable to the adjustment of his commissions in the settlement of accounts made after its enactment, saying: '' These authorities and the principle which they sanction appear to settle the right of the trustees to demand the compensation provided for by the act of 1863, for the reason that it took effect while the property was in their charge, and remained unchanged down to the time of the accounting.''   In the same case on appeal (87 N. Y. 276), the Court of Appeals said as to the items of commission approved by the General Term: '' We are satisfied, by the able opinion of Brady, J.,   *   *   *   that no error was committed in those respects.''

In *Naylor* v. *Gale,* 73 Hun, 53, the trustees accounted for their transactions over a period beginning in 1883. The account was brought to settlement by a judgment made in 1893, after the amendment of the Code of Civil procedure by which, after the rendering of the services, it was provided that trustees were entitled each to a full commission where the value of the personal estate amounted to $100,000.   It was said by Presiding Justice Van Brunt: '' It is admitted that were it not for the law of 1892 the plaintiffs would have been entitled to but one commission, and the question presented is whether by the law of 1892 their claim has

been enlarged as to income received and disbursed prior to that time. As already suggested, the accounting in this action goes back to December, 1883. If the question were an open one, in view of the fact that trustees, unlike executors, have a right to deduct for their compensation full commissions on the income actually received before paying it over (*Matter of Mason,* 98 N. Y. 527; *Matter of Selleck,* 111 id. 284), and that this right accrues annually, I should incline to the opinion that the law, which existed at the time their right accrued, namely, at the end of each year, should govern the right of the trustees to commissions for that year.

" It is true that in the case of executors it has been frequently held that the law existing at the time of the passage of their accounts is the statute, which governs in respect to their compensation, upon the ground that an executor is not entitled to any compensation until the final execution of the duties imposed upon him. And hence no right to commissions accrues until the settlement and passage of his accounts, and such is the rule laid down in the case of *Dakin* v. *Demming* (6 Paige, 95), and since followed. But, as already observed in the case of a trustee in respect to income, his right to commissions accrues annually, and he has a right annually to collect the same; therefore, it would seem that his claim for commissions accrues at the end of each year. But we think that the Court of Appeals, in the case of *Savage* v. *Sherman* (87 N. Y. 283), has established a different rule, and made the rights of trustees in this respect exactly similar to those of executors."

In *Robertson* v. *DeBrulatour,* 111 App. Div. 882; s. c., on appeal, 188 N. Y. 301, the action was brought by testamentary trustees for an accounting. It was commenced in 1903 and judgment was entered in 1905.

The commissions were adjusted, with the approval of both appellate courts, in accordance with a statute which was passed in 1904.

The same Appellate Division which disposed of *Robertson* v. *DeBrulatour,* cited that case, with *Naylor* v. *Gale, supra,* for the proposition that " the commissions allowed to testamentary trustees are governed by the law in force at the time of the settlement of their accounts." *Whitehead* v. *Draper,* 132 App. Div. 799, 802.

In *Matter of Chenery,* 89 Misc. Rep. 680, Mr. Surrogate Fowler held that commissions must be granted in accordance with the law at the time of the accounting.

In *Matter of Naylor,* 164 N. Y. Supp. 462, Mr. Surrogate Cohalan held that the amount of commissions allowed to testamentary trustees is governed by the law in force at the time of the settlement of their accounts.

Mr. Surrogate Schulz, in *Matter of Keane,* 97 Misc. Rep. 213, had before him the accounting of trustees for transactions had before the amendment of 1916, by which it was provided that the value of real and personal property " received " should be considered in the computation of commissions. The learned surrogate then said: " It appears to be well settled and it is conceded by the special guardian who appears in opposition that the law in effect at the time of the accounting is the law which governs the amount of commissions to be awarded (citing cases). Hence, the matter must be determined in the light of the section as amended in 1916."

This review of the cases has been extended in unusual detail, since it is claimed by the objectants that the law is settled to the contrary of these decisions by the cases of *Matter of Bushe,* 183 App. Div. 832, and *Matter of Daly,* 180 id. 307; 223 N. Y. 671.

If *Matter of Bushe* can be taken as holding that commissions of trustees are not to be regulated by the statute as it is at the time when their accounts are settled, its authority must be disregarded as repugnant to the expressions of the Court of Appeals in *Savage* v. *Sherman* and *Robertson* v. *DeBrulatour, supra.* It may be truly said that the declaration of the law in *Savage* v. *Sherman* was *obiter,* but in the *Robertson* case, the point was directly involved and necessarily determined.    Especially is this true in view of the citation of the *Robertson* case in *Whitehead* v. *Draper, supra.*    But there is no contradiction in the *Bushe* case of the uninterrupted course of decision on this subject.

That case came up on appeal from the decree settling the accounts of surviving executors in 1917.    An executor having died on August 5, 1914, his executors were cited to appear upon the settlement of the account of the surviving executors.    The surrogate allowed a sum for services actually performed by the deceased executor, but not by way of commission, and refused to allow to his executors commissions upon the value of unsold real estate.    The executors of the deceased executor appealed only from the refusal to allow commissions.

It is observable that the only claim for such commissions was pressed upon the theory that the deceased executor as such had " received " real estate, and that the only basis of such claim was the statute of 1916, passed after the death of the deceased executor, by which for the first time commissions were made allowable upon real property " received."

Says the court, reciting the changing state of the law: "At the time of the death of the coexecutor, an executor's right to receive commissions was governed by the then section 2730 of the Code of Civil Procedure which gave no commissions to an executor

for receiving real property.   By chapter 443 of the Laws of 1914, in effect September first of that year, the provisions of the Code relating to Surrogates' Courts were revised and re-enacted and the right of executors to receive commissions was embodied in section 2753, which provided, ' The value of any real or personal property distributed or delivered, shall be considered as money in making computation of commissions.'   In 1916 (chap. 596) the section was amended to include allowance of commissions upon real property received by the executors.   It will thus be seen that the question involved is whether the amendment of 1916 vested in the estate of the deceased executor a right to commissions to which he was not entitled at the time of his death.''

It is fairly derivable from the opinion that the only reason for the denial of the commissions was that the deceased executor at the time of his death had no right to them, that the statute as it then existed was the only standard by which these commissions could be ascertained, and that, therefore, the statute as it stood at the time of the accounting could not be applicable, since, if applied, it would be necessarily given a retroactive effect to create a right which the deceased executor did not possess at death.

That the holding did not cover the case of an executor or trustee in life accounting after the enactment of 1916 may not clearly appear in the case cited, but it is plainly manifest in the next case reported, which was decided by the same court at the same time, between the same parties and affecting the same estate. *Matter of Bushe*, 183 App. Div. 834.   There the appeal was from a decree settling the accounts of the surviving trustees as such.   The original trustees were the same persons as the executors who were concerned in the first reported case of *Bushe*.   In the trustees'

accounting, the executors of the deceased trustees were cited and appeared. The surrogate held that the estate of the deceased trustee was " not entitled to commissions, but to only an award for services," and directed payment to his executors of a sum much less than commissions. Upon appeal it was held " that the right of trustees to commissions for paying out funds accrues immediately upon making the payments," and that " during the period of the trusteeship " of the deceased trustee, " Section 3320 of the Code of Civil Procedure was in force," fixing " the commissions to which testamentary trustees were entitled as compensation for services for receiving and paying out both principal and income."

The conclusion of the court allowing the estate of the deceased trustee one-half commissions on all principal received and all principal paid out, and like commissions on all income received and all income paid out in each year during the period of his trusteeship, was preceded by the following language: " While section 3320 was amended in 1915 (chap. 631), by excluding testamentary trustees from its application, the amendment of section 2753 by chapter 596 of the Laws of 1916 restored in substance the provision for commissions to testamentary trustees formerly contained in section 3320, and was in force at the time of the accounting."

The court fell into error in believing that, when in 1915 section 3320 was amended by excluding testamentary trustees from its application, the provision for commissions to trustees formerly contained in section 3320 was restored in substance by the Laws of 1916. The substance of section 3320 on the subject of commissions to trustees was incorporated in section 2753 as revised in 1914, and the statute applied in the Appellate Division to the cases cited had been con-

Surrogate's Court, Kings County, January, 1919.   [Vol. 106.

tinuously in the law.  But the mental process by which that court reached its decision is as plain as its mistake with respect to the changes in the law.

It held that the right to commissions was covered by the law as it stood when the services were performed, but regarded it as essential to the allowance of the right that such law was in force at the time of the accounting.  If section 3320 had in effect been amended to the exclusion of testamentary trustees. from its application, and if in effect its substance had not been restored, is not the inevitable effect of the opinion that the commissions earned would not have been allowed, for the sole and controlling reason that the statute at the time of the accounting contained no warrant for the allowance?  When these two cases are considered together, it is not possible to avoid the conclusion that the first was decided on the ground that the executor died without any right to commissions' and that a subsequent statute could not create such right, while the second case was decided on the ground that a deceased trustee who had, according to the statute at the time of his death, earned commissions, could only have them in case the statute at the time of the settlement of his account provided for their allowance.

*Matter of Daly, supra,* the only other case cited by the objectants, concerned a statute under which it is provided that an executor, who shall have rendered legal service in connection with his executorial duties, shall be allowed reasonable compensation for those services.  The ruling that such statute is not so retroactive as to cover the case where the services were rendered before the enactment may well be understood as resting upon the rule that such statutes are not to be given a retroactive effect when such interpretation would bring into being a right which had no existence

at the time when they were passed. Indeed, this is suggested by the only citation of authority found in the Appellate Division report, which was *Jacobus* v. *Colgate*, 217 N. Y. 235, 240. That case dealt only with a statute by which a cause of action previously denied was bestowed.

It results that the commissions of the trustees in the case at bar are to be regulated by the present statute and are calculable " upon the value of any real property received by them." Code Civ. Pro. § 2753.

The question is thus presented: Is the land, which is the subject of the trust for which these trustees are accounting, " real property received by them? "

In *Phœnix* v. *Livingston*, 101 N. Y. 451, trustees were denied commissions on unsold land, on the ground that the fee to such land never vested in them but in the remaindermen, and that their estate was only commensurate with the trust. The case,. however, arose under a statute which gave commissions only on sums of money received and paid out, and the only claim of the accountants was that the lands which were the subject of their trust were constructively money. The ruling that the trustees did not take a fee and, therefore, could not have commissions upon the value of the lands as if they were moneys received, involved no intimation as to the construction of the present statute, which was obviously enacted to, obviate that ruling.

Unless lands devised to trustees in trust to pay the income thereof are " received " by them, there is no conceivable meaning to be derived from the words of section 2753 of the Code in the light of the history of the enactment and the condition of the law which provoked it.

This view was clearly stated in *Matter of Keane, supra,* in which the learned surrogate said: " In the

Surrogate's Court, Kings County, January, 1919. [Vol. 106.

case under consideration, the real estate was devised to the trustees, and they have the power to sell it, thus differing from the situation in *Phœnix* v. *Livingston,* 101 N. Y. 451, and *Matter of Ross,* 33 Misc. Rep. 163.''

So also in *Matter of Naylor's Estate, supra,* the learned surrogate said: '' There can be no question but that the trustees received the real estate,'' quoting the provision of the will containing a devise in trust, and adding: ''As the devise is direct to the trustees, there was unquestionably a receiving of the real estate within the meaning of section 2753, Code of Civil Procedure, so as to entitle the trustees to commissions on the same.''

These two cases were followed by Mr. Surrogate Fowler in *Estate of McGurk,* 175 N. Y. Supp. 597.

In the case at bar, there is a direct devise of the real estate with respect to the two residuary trusts, while the two legacies of fixed sums in trust are specifically charged upon the real estate, with the direction that they be provided out of the real estate if there be insufficient personal property to provide for the same; and this is followed by a direction to the trustees to use or hold all or such part as they may think necessary of the real estate, for the purpose of completing the funds bequeathed in trust.

The result must be that the accountants are entitled to one-half commissions upon the principal of the estate, including the real property.

It is next objected that the trustees, although they hold more than $395,000 in this estate, are not each entitled to commissions as upon a fund of more than $100,000, since they are trustees of six separate trusts, none of which amount to more than $69,000.

In *Matter of Willets,* 112 N. Y. 289, testamentary trustees filed twelve petitions, each for the settlement of their accounts under separate trusts arising from

the same will, issued twelve citations and maintained twelve proceedings. The surrogate refused to consolidate these proceedings. The Court of Appeals, in answer to the claim of the appellant that the trustees should have instituted but one proceeding for one accounting as to all the funds, should have rendered but a single account, and that the surrogate erred in not compelling them to consolidate all the accounts, said: "We are of opinion that this claim is not well founded. It was quite appropriate that the trustees should constitute the several trusts and keep the accounts as to each trust separate, and so they were in fact ordered to do by the decree upon their accounting as executors. We certainly can perceive no legal error on the part of the surrogate in entertaining a proceeding for a separate accounting as to each trust."

The conclusion is irresistible that, if it was right to maintain the separate proceedings, it was because the parties necessary to one account were not concerned in the others, and that to commingle them would have been a misjoinder.

In the case cited, the separation of the accountings was apparently an advantage to the trustees in the calculation of their commissions, but the rule there laid down should not be less readily applicable to the present case where the advantage is reversed. However convenient it may be to cover many separate trusts in one account, they should, under the constraint of this decision, be treated separately with respect to any expense or burden.

Illustrations could be multiplied to show the unlawful result of a comprehensive account. One trust with a single beneficiary might thereby be loaded with a part of the expense of service of many parties to trusts in which the single beneficiary was not interested, the compensation of special guardians not necessary to

the disposition of the account of the particular trust, the delay and expense of a controversy in which the single beneficiary was not concerned, and, lastly, as in this case, a commission increased by the addition of the single trust funds to many others.

*Matter of Johnson,* 170 N. Y. 139, arose under a statute which provided that three full commissions were allowable when the estate of the decedent amounted to more than $100,000, and the account in dispute was that of trustees of several trust funds, respectively, less than $100,000, but in the aggregate more than that sum. It was there held that the trustees accounting could not each have full commissions calculable upon the total fund covered by their account since " each of the separate trust estates * * * should stand by itself and the commissions to the trustees thereof should be allowed according to the value of the assets belonging exclusively thereto." The opinion contains full reasoning and illustration supporting the ruling quoted above.

The case is decisive of the present question, unless a distinction is suggested by the language of the present statute, that each accountant is entitled to full commissions " if the value of the estate or fund accounted for amounts to $100,000."

The utmost that can be urged with reference to the words " estate or fund accounted for " is that they may relate to the aggregate value of the separate trusts included in the account. Conceding this possible interpretation, it is not the plain and invincible meaning of the phrase. The statute supervened upon a condition of the law, under the cases of *Willets* and *Johnson,* that the only fund for which the account can be made as to each separate beneficiary is the fund held separately for him. It is not manifest that the statute intended a change of the law in that respect. Is it not

rational that the words "the fund accounted for" contemplate the fund as the necessary subject of a separate account as to each severable trust? Is not this construction preferable over the contrary conception of the meaning of the words, when due regard is given to the declared state of the law, and the circumstances of fairness and justice which underlie it?

The true meaning of the new statute, in its application to this case, is that the test of the size of the estate or fund accounted for is the amount which is found in each fund accounted for separately.

The value of the estate must be taken as of the time of its receipt by the trustees (*Robertson* v. *DeBrulatour,* 111 App. Div. 882, 901; *Matter of McGurk, supra*), and the value given to it in the account must prevail.

There was no adjudication in the settlement of the executors' accounts involving the present question nor can it be doubted that the trustees are actually accounting for the lands in this proceeding.

It results that the trustees are entitled to one commission to be divided among them, *viz.,* one full commission on all moneys received and disbursed, and one-half commission on all the estate or fund received by them, whether personal or real, and that such allowances are to be borne by the several trusts proportionately.

Decreed accordingly.