## PENDERGRASS v. NEW YORK LIFE INSURANCE COMPANY et al.

1. Under the Civil Code (1910), § 3436, it is unlawful in this State for any person, company, or corporation to reserve, charge, or take for any loan or advance of money, or forbearance to enforce the collection of any sum of money, any rate of interest greater than eight per centum per annum, either directly or indirectly by way of commission for advances, discount, exchange, or by any contract or contrivance or device whatever. But a contract to pay eight per cent. per annum semi-annually, with interest on the semi-annual payments of interest after due, does not constitute usury.

2. There is no evidence in the record that the mortgagee or transferee had notice of any duress exerted by the plaintiff's husband in order to induce her to execute the mortgage or security deed and notes in controversy. The mere fact that the wife remained in possession of the land would not be evidence of notice of duress by the husband, or to put them on inquiry of such fact. It was not error, therefore, to exclude the evidence as to duress on the part of the husband of the plaintiff in securing her signature to the deed and notes in controversy.

3. The court did not err in directing a verdict for the defendant, and in overruling the motion for new trial.

No. 5407. FEBRUARY 16, 1927.

Equitable petition. Before Judge Fortson. Clarke superior court. March 9, 1926.

Mrs. W. F. Pendergrass brought her petition against the New York Life Insurance Company and the Guaranty Trust Corporation, to enjoin the sale of certain lands, and for cancellation of a deed executed by her to the Guaranty Trust Corporation. She alleged substantially the following: She married W. F. Pendergrass in December, 1915, and soon afterward her father gave her a described tract of land in Banks County, containing 100 acres, more or less, and placed her and her husband in possession of the land, but did not at that time make her a deed. Soon after this, on the insistence of her husband her father made her a deed which was properly recorded. Thereafter she learned, to her horror, that her husband was largely in debt. He asked her to deed or mortgage her land, so that he might get money with which to pay his debts. She refused to do this. He had S. J. Nix, of Jefferson, who was representing some loan company, to

Cancellation of Instruments, 9 C. J. p. 1254, n. 94.
Mortgages, 41 C. J. p. 437, n. 72.
Usury, 39 Cyc. p. 945, n. 75; p. 961, n. 50; p. 962, n. 59; p. 965, n. 71; p. 968, n. 79; p. 971, n. 4, 98.

send her an application for a loan, for her to sign. She refused to sign, stating that she did not want to borrow any money. Her husband then had Mr. Wood, who was representing a government loan, to see her; and she likewise informed him that she did not want to borrow any money. Soon after this two men appeared at the place, and upon inquiry they told her they were looking at the land with the view of making a loan on it. She told them that the land belonged to her and she did not want to make any loan and would not sign any paper pertaining to her land. This conversation was with Mr. Wallace and in the hearing and presence of Mr. Rylee; and they both understood that she would not freely and voluntarily sign any paper affecting her land. She did not at that time know what interest Wallace had, but subsequently learned that he was a creditor of her husband, and was aiding Rylee, who was the agent of the money lender, to make a loan so that he might get his debt. Soon after the visit just referred to, petitioner's husband stated to her that unless she borrowed the money so that he could pay his debts, he would be arrested and put in jail. In the mornings when going away he would say to her, "If the sheriff comes, you tell him I have gone away." He would then go to the woods and spend the day. He further told her that her brother owed him some money, and that unless she borrowed the money for him he would kill her brother and run away. He threatened that if she did not borrow the money for him he would abandon her and separate from her, and place the children in an orphanage and deprive her of access to them. She had one child born in August, 1919, and another one born in September, 1921. She believed her husband had determined to leave her if she did not yield to his wishes, and that he would have the legal authority to take her children and dispose of them. Going through this constant appeal at the time before her child was born, and soon thereafter, unnerved her to the extent she was no longer able to resist the threats of her husband; but under the fear that he would carry out his threats, she ceased to be able to exercise her own judgment, but acted contrary to her free will and under his coercion. Under this state of facts, and without ability to resist, she went to Athens with him to the office of H. M. Rylee, and there signed what she understood was an application to borrow $2,500 and to secure the same

by a deed to her land. Rylee was not present, but some member of his office force was, and asked her to sign the paper; she stated that she knew nothing about it, but her husband replied that he knew all about it and for her to sign it, which she mechanically did.

On or about November 1, 1921, she again was brought to Athens by her husband and to the office of Rylee and was then asked to sign a deed and a note and a series of interest coupons. She stated to Rylee that she could never pay such debt, and that she did not want to sign the notes and deed. His reply was that her husband would have to look after that part of it for her; and under the direction of her husband she signed the papers. Rylee was the agent of the Guaranty Investment & Loan Company, and as such agent he knew at the time that she was not signing the notes and deed freely, but under the coercion of her husband. Some weeks later her husband informed her that the money had come, and he wanted an order to Rylee for it, which order she gave, and her husband received the money in the form of a check or checks, and later paid out the same as he saw fit, he having her sign blank checks and he filling them as he wished. In fact the money was borrowed by him, and she was coerced by his threats to sign the papers including the notes and deed; and these facts were known to the Guaranty Investment & Loan Co. at the time of said transaction, in that they were known to Rylee representing said company; and the deed and notes executed by her are void. On November 21, 1921, the day the money came, the Guaranty Investment & Loan Co. transferred the deed and notes to the New York Life Insurance Co. The New York Life Insurance Co. is a foreign corporation, and was represented then and now by Rylee as agent. At the time said transfer was taken the New York Life Insurance Co. thus had actual knowledge of the fact that the petitioner had been coerced into signing the deed and notes. In addition to this, petitioner remained in possession of the land, and her possession was notice to the New York Life Insurance Co. of all the rights she had therein, and of any defenses she might have as against the Guaranty Investment & Loan Co. The New York Life Insurance Co. has advertised to sell the land on the first Tuesday in July, 1923, and unless re-

43

strained will make the sale. Said sale should be enjoined for the following additional reasons: (1) While the contract authorized the Guaranty Investment & Loan Co. to exercise the option of declaring the entire debt due on failure to pay interest, this was a power that could not be assigned by said Guaranty Investment & Loan Co. to the New York Life Insurance Co., or to any one else; while it could have employed another to make the sale, the option to be exercised was personal, and could not be assigned, and the New York Life Insurance Co. therefore has no authority under its assignment to make sale. (2) The contract provides for interest at the rate of 8 per cent. per annum from date, to be paid semi-annually; this contract is usurious, and the effect of it is to render void all the interest; and, under the terms of the contract in consequence of this forfeiture, there was no interest due on May 1, 1923, and for that reason a sale could not be had. (3) The advertisement of the New York Life Insurance Co. announces the property to be sold for the purpose of paying the principal and interest and cost of proceedings; the contract under which it is advertised provides for the payment of 10 per cent. attorney's fees "in event said note is placed in attorney's hands for collection;" this attorney's fee could not be collected under the law in this sort of proceeding, and would be collected if the defendant be allowed to sell. (4) While under the law a fi. fa. might sell property at any season of the year, yet, when the sale is to be had by the exercise of an option by an attorney in fact, then it is the duty of such attorney in fact to exercise such option so as to hurt his principal as little as possible; the land in question is located in Banks County, far removed from any town or city; if sold in July, the middle of the summer, under the present financial distress of the country it would not bring anything like the debt claimed; the only purpose of selling it at that time would be to enable one interested to buy it at a sacrifice, and petitioner alleges upon belief that the purpose of the sale at this time is for that reason. The interest, as petitioner has been informed and charges, was paid in 1922 by her husband; the alleged forfeiture is based on a claim that six months interest due May 1, 1923, was not paid; and for this reason defendant should be enjoined from selling the property at an inopportune time. (5) If the New York Life Insurance Co., under its transfer, had author-

ity to sell said property as petitioner's agent or attorney in fact, it would be the duty of said agent to make the property bring all it would, whereas, if such agent was authorized to buy at its own sale, which right is claimed in this instance, there would be conflict of interest, which is contrary to public policy, and a sale should not be allowed made under such circumstances.

The New York Life Insurance Co. has not sued or obtained any legal authority for its proceeding, but is acting solely under the power claimed under said deed. The relationship existing between defendants in this case and their agent is as follows: H. M. Rylee advertises that he has money to loan; he finds a borrower for the money; he takes notes and a deed from such borrower, payable to the Guaranty Investment & Loan Co., of Clarke County, Georgia; it is understood, however, that the Guaranty Investment & Loan Co. is not to furnish any money, but the same is to be furnished by the New York Life Insurance Co., which company will take a transfer of the papers; in this proceeding the borrower makes a contract to pay a fee or commission to Mr. Rylee, the agent, for the money, said commission being agreed on, and, as petitioner understands, it was 5 per cent. in this case; out of this commission the Guaranty Investment & Loan Co. gets a certain per cent. which, added to the 8 per cent. interest, makes a usurious rate that is being paid by the borrower; the papers are then transferred to the New York Life Insurance Co., which takes with full knowledge of these facts, and without paying its agent any further compensation, and subject to all the equities of the borrower; these facts petitioner alleges upon information and belief, and they constitute an illegal transaction in that it is contrary to the statute. The sale of the land will be consummated unless a restraining order is granted; and if consummated, petitioner will be remediless for the wrongs done her. Waiving discovery, she prays: (1) that the deed and notes described be canceled, and the New York Life Insurance Co. be forced to bring its action against W. F. Pendergrass, its real debtor; (2) that it be decreed that petitioner is not responsible in any way for any part of said debt; (3) that the New York Life Insurance Co. be perpetually enjoined from selling her land; (4) that she have such further relief as she is entitled to under the facts; etc.

The Guaranty Trust Corporation, successor to Guaranty Investment & Loan Company, and the New York Life Insurance Co. filed separate but identical demurrers which need not be recited at length. The court overruled some of the grounds of demurrer, and sustained others. To this ruling the plaintiff filed exceptions pendente lite. The defendants filed separate but substantially identical answers in which they denied that the petitioner acted contrary to her own free will and accord, and alleged that the application for the loan was freely and voluntarily made, and the notes and deed were freely and voluntarily signed by the petitioner, and the proceeds of the loan were placed to her credit in the Georgia National Bank of Athens and paid out on her orders. It is admitted that the deed and notes were transferred to the New York Life Insurance Co.; it is denied that defendants had knowledge of any facts which made the transaction illegal, or contrary to the statutes. The insurance company avers that it is the holder of the note referred to; that it provides that the failure to pay any interest coupon gives the holder the option of declaring the entire principal sum due; that the interest on said note has not been paid; that respondent is entitled to a judgment on said note against petitioner in the sum of $2,500, with interest, and a special lien against the real estate described in the deed referred to; and that this defendant elects to declare the full amount due in accordance with the terms of said note.

At the conclusion of the evidence the court directed a verdict for the defendants. A motion for new trial was overruled, and the plaintiff excepted.

*Rupert A. Brown, John J. Strickland,* and *G. P. Martin,* for plaintiff.

*Bryan & Middlebrooks, H. M. Rylee, Erwin, Erwin & Nix, John B. Gamble, H. C. Tuck, W. M. Smith,* and *H. C. Erwin,* for defendants.

HILL, J. (After stating the foregoing facts.) The trial judge directed a verdict for the defendants. A motion for new trial was based on the usual general grounds and two special grounds. Exceptions pendente lite were filed to the sustaining in part of certain demurrers filed by the defendants to the petition, and error is assigned thereon in the bill of exceptions; but in the brief of the plaintiff in error the only questions argued are upon

the rulings of the court in holding that this was not an usurious transaction, and in excluding the evidence of Mrs. Pendergrass and Lonnie Eubanks, tending to show coercion and duress on the part of the husband of the plaintiff in executing the deed by her, this latter question being made by the amended motion for new trial; and whether joint occupancy of the wife and husband of real estate, alone, constituted notice, to the vendee and transferee of a security deed excuted by the wife to secure a loan, of the husband's coercion of the wife in compelling her to execute the deed.

1. The notes given by Mrs. Pendergrass, to secure the payment of which the security deed was given by her, provided for eight per cent. interest per annum, payable semi-annually. Separate notes were given for the interest, which provided that they should bear eight per cent. interest from maturity; and it is insisted that such a contract is usurious. The Civil Code (1910), § 3436, provides that "It shall not be lawful for any person, company, or corporation to reserve, charge, or take for any loan or advance of money, or forbearance to enforce the collection of any sum of money, any rate of interest greater than eight per centum per annum, either directly or indirectly by way of commission for advances, discount, exchange, or by any contract or contrivance or device whatever." In the case of *Pinckard* v. *Ponder,* 6 *Ga.* 253, it was held that "an agreement to pay interest, that was lawfully *past due* did not constitute usury, and that each renewal of the note was a new contract." In *Union Savings Bank* v. *Dottenheim,* 107 *Ga.* 606, 614 (34 S. E. 217), it was said: "A transaction which calls for the payment of the principal at a certain time, and the payment of interest at fixed times during the period that the principal is to run,' is a valid transaction. The interest may be paid annually, semi-annually, quarterly, or monthly, or even in lesser periods, if the parties see fit so to contract; and the failure to pay any interest which is past due under such stipulation would render such past-due indebtedness a liquidated demand, which would itself bear interest. *Pinckard* v. *Ponder* [supra] ; *Scott* v. *Saffold,* 37 *Ga.* 384; *Calhoun* v. *Marshall,* 61 *Ga.* 275 [34 Am. R. 99] ; Mowry *v.* Shumway, 44 Conn. 493; Iron Works *v.* Lottimer, 25 Ohio St. 621; Mowry *v.* Bishop, 6 Paige, 98; Tousey *v.* Robinson, 1 Met. 663; Tallman

v. Truesdell, 3 Wis. 393; Goodrich v. Reynolds [31 Ill. 490], 83 Am. D. 240; Newton v. Woodly [55 S. C. 132], 32 S. E. R. 531."

2. The special grounds of the motion for new trial set out at length the testimony of the plaintiff, and of Lonnie Eubanks, tending to show coercion or duress on the part of the husband in securing the signature of the plaintiff to the deed and notes in question. The rejected evidence tended to show that the husband of the plaintiff, in order to make her execute a deed to secure a loan on the property which was in her name and which had been given to her by her father, had threatened to take away plaintiff's children, to kill himself, and to inflict bodily harm upon her, if she did not secure the loan; that plaintiff had stated a number of times, and in the hearing of Mr. Rylee, who was procuring the loan, and who brought the papers for plaintiff to sign, that she did not want to sign the papers, that she did not want to make a loan on the property, which was her property. This testimony was excluded by the judge, and error is assigned thereon. There is no evidence in the record that the mortgagee or transferee had any notice of the duress imposed by the husband on the wife in order to induce her to execute the mortgage; and for this reason the evidence, the exclusion of which is assigned as error, was not admissible as against the defendant. *Garrett* v. *Thornton, 157 Ga.* 487 (121 S. E. 820); *Johnson* v. *Leffler Co., 122 Ga.* 670 (3) (50 S. E. 488); *Hughie* v. *Hammett, 105 Ga.* 368 (2) (31 S. E. 109); *Skinner* v. *Braswell, 126 Ga.* 761 (55 S. E. 914). The mere fact that the plaintiff remained in possession of the land was not evidence that the defendant had notice that the security deed was procured by duress of the husband. The plaintiff testified that "Mr. Rylee [the agent who was negotiating the loan] knew that I didn't want to sign the papers to borrow money, but he didn't know anything about my husband making me sign the checks." This evidence did not show notice to the defendant; and even if it did show notice to Rylee, there was no evidence to show that Rylee was the agent of the defendant. In the case of *Skinner* v. *Braswell,* supra, it was said by Mr. Presiding Justice Beck: "Where a husband as agent bargained for the sale of the property of his wife, and she executed a deed thereto, a purchaser for value took a good title, although

the money so obtained was used to pay the debts of the husband, provided the purchaser was not a creditor to be thus paid and was not a party to any scheme or arrangement whereby the money paid for said property was to be used in any particular way. And the fact that the wife in signing the deed acted under the duress of the husband will not vitiate the contract, where it does not appear that the purchaser had any notice, or reason to apprehend, that the husband had coerced the wife into signing said deed." And see *Rood* v. *Wright,* 124 *Ga.* 849 (53 S. E. 390). The trial judge did not err in excluding the evidence, as complained, and in directing a verdict for the defendant.

*Judgment affirmed. All the Justices concur, except Russell, C. J., dissenting.*