# BURCH v. AMERICUS GROCERY COMPANY.

1. Whenever a general agency has been established for any purpose, all
   persons who have dealt with the agent have a right to assume that his
   authority to deal with them in behalf of his principal continues, until
   notice, express or implied, has been conveyed to them that the agency
   has been revoked. It follows, that until notice has been brought home
   to them, the acts of the agent within the apparent scope of his author-
   ity will be binding upon the principal, even though the agent may as-
   sume to act in his representative capacity after his authority to do so
   has been revoked.
2. It is not cause for a new trial that the court improperly admitted in
   evidence a portion of the agreed brief of the testimony adduced on a
   former hearing of the case, when it is apparent that the effect of so do-
   ing can not really have prejudiced the excepting party before the jury.
3. That a letter, properly addressed, was duly stamped before it was mailed
   may be shown, not only by positive testimony establishing the fact, but
   also by persuasive proof to the effect that the only envelopes used in the
   office of the sender were such as bore the printed stamp of the govern-
   ment, and that it was the custom and rule of the clerks in the office to
   use the envelopes furnished them by the sender for the purpose of con-
   ducting his correspondence.

Argued February 23,—Decided March 28, 1906.

Complaint.  Before G. W. Williams, judge pro hac vice.  City court of Dublin.  May 2, 1905.

*J. S. Adams,* for plaintiff in error.

*W. C. Davis* and *J. B. Sanders,* contra.

EVANS, J.  The Americus Grocery Company sued J. B. Burch for a balance alleged to be due on open account.  The only item in dispute was one of May 8, 1903, for a certain quantity of tobacco. The defendant contended that this item was purchased by his clerk, Mike Burch, after he had left his employment, and that he neither authorized nor ratified the purchase nor received the tobacco.  On the other hand, the plaintiff insisted that Mike Burch was the general agent of the defendant in the management of his store, and as such, on previous occasions, had ordered goods of plaintiff on defendant's account, and that the plaintiff, without notice that Mike Burch was no longer employed by the defendant, took the order in the defendant's name and shipped the goods to the defendant, as was usual in the past transactions.  On the trial it appeared that the defendant operated a sawmill and in connection therewith conducted a store or commissary.  The commissary was in the charge of Mike Burch, who purchased all the merchandise therein sold and managed the business.  On former occasions the plaintiff had sold merchandise to the defendant upon the order of his agent, Mike Burch.  When the merchandise, to recover the price of which the present action was brought, was ordered of the plaintiff by Mike Burch, he was not in the employment of the defendant, and had not been for two months past.  Neither the plaintiff company nor its "drummer" was aware at the time of receiving the order that Mike Burch was no longer in the service of the defendant.  The plaintiff's salesman called at the commissary of the defendant and asked for Mike Burch, as he had always done, and was informed that Mike Burch was about three miles away, superintending the putting down of a sawmill.  There he found him and took the order for the merchandise.  It was shipped to the defendant, and the bill of lading was mailed to him.  The defendant testified, that the goods were never received by him, but were taken possession of by Mike Burch without his knowledge, and that he never received the bill of lading for the goods.  Upon these facts the jury returned a verdict in favor of the plaintiff for the value of the goods, which verdict the trial judge refused to set aside on motion for a new trial.

1. In the management of the business of the commissary, the agent, Mike Burch, had general powers. Relatively to this business, he was the general agent of the defendant in the purchase of merchandise. "Whenever a general agency has been established for any purpose, all persons who have dealt with such agent, or who have known of the agency and are apt to deal with him, have a right to presume that such authority will continue until it is shown to have been terminated in one way or another; and they also have a right to anticipate that if the principal revokes such authority, they will be given due notice thereof. It is a general rule of law, therefore, upon which there seems to be no conflict of authorities, that all acts of a general agent within the scope of his authority, as respects third persons, will be binding on the principal, even though done after revocation, unless notice of such revocation has been given to those persons who have had dealings with and who are apt to have other dealings with the agent upon the strength of his former authority." 1 Clark & Skyles on Agency, §173 (b). This rule was stated and applied in *Thompson* v. *Douglass,* 64 *Ga.* 57. The obligation resting upon the principal of giving notice of the revocation of the authority conferred upon his agent has been analogized to the duty which the law imposes upon the members of a partnership to give due notice of its dissolution to creditors and the public at large. Claflin *v.* Lenheim, 66 N. Y. 301; 1 Parsons on Contracts (9th ed.), 72, and cit. Where there is no attempt at all to comply with this duty, a retiring partner is to be held liable for debts of the partnership, created after he ceased to be a member thereof, unless he shows that notice of his retirement had been brought home to the persons who subsequently became its creditors. *Ewing* v. *Trippe,* 73 *Ga.* 776; *Pyron* v. *Ruohs,* 120 *Ga.* 1064, and cit. Actual notice alone will affect creditors of the firm. *Askew* v. *Silman,* 95 *Ga.* 678; *Camp* v. *Southern Banking Co.,* 97 *Ga.* 582. And like notice must be shown before one who has revoked the authority conferred upon his general agent will be at liberty, relatively to persons who have dealt with such agent upon the faith of his authority as recognized by his principal in the past, to repudiate a contract made in behalf of the principal by the agent after his authority has been revoked. Braswell *v.* Ins. Co., 75 N. C. 8; 1 Parsons on Contracts (9th ed.), 71. The term "actual notice" is intended to be understood in its strictly legal, technical sense, and

is not to be confounded with actual knowledge, which, as was pointed out in *Clarke* v. *Ingram,* 107 *Ga.* 570, is by no means a synonymous or interchangeable term. "Notice is actual when one either has knowledge of a fact or is conscious of having the means of knowledge, although he may not use them;" it may be either "express notice," or simply "implied notice"—notice communicated by direct and positive information from persons cognizant of the fact, or notice such as "arises when the party to be charged is shown to have had knowledge of such facts and circumstances as would lead him, by the exercise of due diligence, to a knowledge of the principal fact." Id. 571. In the present case no express notice was shown, and the controlling issue was whether or not the plaintiff had "implied notice" that there had been a revocation of the agency, within the meaning of the Civil Code, §3933, which declares that "Notice sufficient to excite attention and put a party on inquiry is notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, is equivalent to knowledge in fixing the rights of parties." The only circumstance upon which the defendant could rely as suggesting the necessity of making inquiry whether the agency had been terminated was that the order for the goods was given to the plaintiff's salesman three miles from the defendant's store, where the agent had been employed. The defendant was engaged in the sawmill business, and his "commissary" was run in connection with that business, as an adjunct to it, and not as a wholly independent enterprise. When the order for the goods was taken, Mike Burch, who still assumed to act as the defendant's agent, was superintending the erection of a sawmill. That it did not belong to the defendant or was not to be used in connection with his business was not self-apparent, nor was the fact that Mike Burch was not at the time engaged in his customary duties at the commissary calculated to put the plaintiff's salesman on notice that he had left the service of the defendant. Moreover, the salesman had first driven by the store of the defendant and inquired for Mike Burch, who had theretofore been in charge of it. Instead of being notified that Mike Burch was no longer in the defendant's employ, the salesman was told where Mike Burch could be found. Under these circumstances it is not strange that the salesman should assume that the employees at the store of the defendant understood that he had called

on business, as theretofore, and wished to see the defendant's representative, nor is it remarkable that, after being informed as to his whereabouts but given no intimation that he was no longer the defendant's agent, the drummer should entertain no doubt as to the continuance of the general agency. The jury, after considering all the facts and circumstances brought to light at the trial, found against the contention of the defendant that due caution and prudence on the part of the plaintiff's drummer ought to have suggested to him the propriety of making inquiry, if he did not divine the truth. The burden of proof was upon the defendant to establish his defense that the plaintiff was affected with implied notice. *McLean* v. *Camak*, 97 *Ga.* 812-813; *English-Am. Loan Co.* v. *Hiers*, 112 *Ga.* 823. The plaintiff, being a creditor of the defendant and having had numerous business transactions with his accredited agent, was entitled to receive a formal notification from him of the termination of the agency, or the legal equivalent of such a notification. The plaintiff could in good faith remain passive, so long as the defendant failed in his legal duty to take active measures to impart notice. *Camp* v. *Banking Co.*, 97 *Ga.* 586. "If one of two innocent parties must suffer by the act of a third party," assuming to act as an agent of one of them, "he who put it in the power of such third party to do the wrongful act must suffer the loss, rather than the other innocent party who would be a victim without any fault on his part." *Blaisdell* v. *Bohr*, 77 *Ga.* 382. The defendant was admittedly at fault, having failed to take any steps to give notice to the plaintiff; whereas the plaintiff had not omitted to perform any legal duty owing to the defendant, and the plaintiff's drummer admittedly acted in entire good faith. The jury took the view that the plaintiff should not be called on to suffer the loss. "In this there is no hardship upon the defendant," as was pointed out by Rapallo, J., in Claflin *v.* Lenheim, supra, who added that it was the defendant's duty, "after he had accredited his brother for a series of years as authorized to deal in his name and on his responsibility, when he terminated that authority, to notify all parties who had been in the habit of dealing with his agent, as the plaintiffs had been to his knowledge. This was an act easily performed and would have been a perfect protection to him and prevented the plaintiffs from being deceived. Justice to parties dealing with agents requires that the rule requiring notice in such

cases should not be departed from on slight grounds, or dubious or equivocal circumstances substituted in place of notice. If notice was not in fact given, and loss happens to the defendant, it is attributable to his neglect of a most usual and necessary precaution." The verdict of the jury appears to be in accord both with the strict law and the common justice of the case, and it should not be set aside unless the court below committed some error which was obviously calculated to bring about a result which would not otherwise have been probable.

2. The case had been previously tried and a brief of the evidence had been agreed on by counsel. On the trial now under review, the defendant was asked if he did not formerly swear, "when Mike Burch left, young Wilson took his place and did the buying for me." Upon defendant's denial of having previously sworn thus (instead of stating that Frank Burch succeeded Mike Burch as manager of the store), the court admitted in evidence, over the defendant's objection, so much of the agreed brief as contained the quoted extract. The defendant complains of the admission of this evidence, as well as of the omission of the court to instruct the jury for what purposes they could consider it. It does not appear that the agreed brief of the evidence adduced on the former trial had been approved by the presiding judge, as was true in *Anderson* v. *Tribble,* 66 *Ga.* 584, 589. But even if this brief was inadmissible for the purposes of impeachment, the refusal of the judge to exclude it is not cause for ordering a new trial. The main, if not the sole, issue in the case was whether the plaintiff had notice of the termination of Mike Burch's agency at the time of receiving the order for the tobacco or before shipping it. The fact that one clerk rather than another may have succeeded Mike Burch as manager of the store could not have aided the jury in the solution of this issue, nor do we see how the evidence admitted over the defendant's objection could have really prejudiced him before the jury in their determination of this controlling issue.

3. When it is shown that a letter was properly addressed, duly stamped, and mailed, a prima facie inference of fact may be drawn that it was received by the addressee. *National Building Asso.* v. *Quin,* 120 *Ga.* 358. A witness for the plaintiff testified by interrogatories that a bill of lading was enclosed in an envelope, properly addressed, and mailed to the defendant. This testimony was ob-

jected to because it was not shown that the letter was stamped; whereupon the secretary and treasurer of the plaintiff company testified: "We use in our office only envelopes already stamped by the government, with our name thereon, the same being the regular government envelope. I can not swear of my own knowledge that one of these envelopes was used in mailing the bill of lading, but to the best of my knowledge and belief it was. I believe it because it was our rule and custom to use them." The court then refused to rule out this testimony. The jury could reasonably have inferred from this testimony that the letter was duly stamped, and the court properly refused to exclude the evidence objected to. Though evidence of this nature is by no means as strong or convincing as positive testimony concerning the fact sought to be established, it should nevertheless be allowed to go to the jury for what it is worth. See *Leonard* v. *Mixon, 96 Ga.* 239.

*Judgment affirmed.  All the Justices concur.*