### 5153.  GERMAIN COMPANY *v.* BANK OF CAMDEN COUNTY.

1. The amendment offered by the plaintiff cured the original defects in the petition. The authority of an agent in a particular instance need not necessarily be proved by express contract, but it may be established by the habits, conduct, and course of business of the principal. If one thus holds out to another that his agent possesses certain authority, and this induces or influences others in their dealings with the agent, the principal is estopped to deny that the agent has the authority which, as reasonably deducible from the conduct of his principal, the agent apparently possesses.

2. Under the petition as amended, the issue is clearly presented as to whether the defendants, by their course of dealing, so held out their agent as one having authority that the plaintiff (acting as a person of average prudence and good faith would act) was justified in believing that prior limitations upon the authority of the agent had been withdrawn. The court did not err in overruling the demurrer.

DECIDED DECEMBER 9, 1913.

Complaint; from city court of Brunswick—Judge Krauss. August 9, 1913.

*Bennet, Twitty & Reese,* for plaintiff in error.  *R. D. Meader,* contra.

RUSSELL, C. J. The Bank of Camden County brought suit upon an unpaid draft, alleged to have been signed by the Germain Company, per J. E. Poore, and indorsed by John M. Holtzendorf Jr. and J. B. Clark. The draft was drawn upon the Germain Com-

pany, Brunswick, Georgia. The defendant demurred to the petition, and the plaintiff amended it. The demurrer was overruled, and exception is taken to the refusal to sustain the demurrer and dismiss the petition.

It will be noted that ostensibly the draft is drawn upon the Germain Company by the Germain Company itself, and the question which might have arisen as to the authority of Poore is answered by the allegation of the petition that Poore had full authority to draw the draft, or at least to draw such a draft as that involved in the case under consideration. The real question presented in the case is whether the language and contents of the draft of themselves imposed such limitations upon Poore's authority as gave notice to the bank, or to any other person who might have handled the draft, of the fact that Poore's authority was limited, so that if the draft was paid without a compliance with these conditions, the payment would be at the peril of the person cashing the draft. In the face of the draft, but on the left-hand side, and separated from the draft itself by a dotted line, appeared the following words: "Bill of lading must be attached to this draft." "a/c ties loading at Sadler's Creek." "No protest." And at the bottom of the draft, following the signature of the drawer, appeared these words: "This draft will not be honored if statement is detached."

We attach some weight and importance to the fact that there is no allegation in the petition that the Germain Company has ever received the ties which were being loaded at Sadler's Creek, or any other consideration for the draft, and learned counsel for the plaintiff in error not only stressed that point, but further insisted that the stipulation appearing in the draft clearly constituted such a limitation upon the authority of the agent Poore as to put anybody and everybody to whom the draft might be offered upon notice that Poore was not a general agent, but only a special agent, and that his authority was limited, and that since there was no bill of lading attached to the draft, and it is expressly alleged that no statement had ever been attached thereto, the bank, in dealing with Poore's draft, acted at its own risk, and can not in the present case hold the defendant as the maker of the draft. There is no allegation that the draft was ever accepted, and consequently the defendant can not be held liable otherwise than as maker.

We fully recognize that commercial paper passes current, to a limited extent, like money, and, accordingly, power to an agent to make or indorse it (which generally is strictly limited) will never be lightly inferred. And even when the grant of an agency clearly appears, the authority to execute commercial paper must be strictly pursued. Prima facie, at least, this draft which imposed the attaching of a bill of lading and a statement of account to the draft, as a condition precedent to the agent's authority to draw, would not have protected the bank in paying the draft. But the plaintiff amended its petition by alleging "that said draft was given for cross-ties loaded at Sadler's Creek, as stated on said draft, which creek is near the City of St. Mary's in Camden county; the same were intended to be loaded on a lighter; no common carrier was operating at said Sadler's Creek nor engaged in transporting ties from said Sadler's Creek, and therefore no bill of lading was or could be given for said ties. Said the Germain Company, acting by its agent J. E. Poore, had repeatedly and shortly before the giving of this draft given similar drafts to other parties, in which the same, or practically the same, language was used as is used in the draft sued on, and to which no statement was attached any more than a statement is attached to the draft sued on, nor was any bill of lading attached to said other drafts. Said other drafts were cashed by plaintiff in its ordinary course of business for other parties. Said drafts were assigned and transferred to plaintiff, and the same were paid by the Germain Company without question."

In view of this amendment, it is not necessary for us to rule upon the point, made by counsel for the defendant in error, that it is apparent that the words, "Bill of lading must be attached to this draft," and "This draft will not be honored if statement is detacned," are plainly not a part of the draft itself, though it is apparent from the allegations of the petition that the words "a/c ties loading at Sadler's Creek" were intended to be a substitute for the usual statement, and the petition alleges that no statement was in fact detached, because none had ever been attached. Under the amendment above quoted, we think that the defendant had waived, at least as to the particular transaction here involved, any limitation upon the authority of its agent Poore, which might otherwise have been implied from the cautionary words in regard to the bill of lading and the statement, and which evidently were ordinarily

intended to be attached to the form of draft used by the Germain Company. While it is true, as was held in *Claflin* v. *Continental Jersey Works, 85 Ga. 27* (3b), 28 (11 S. E. 721), that whoever deals with an agent with full notice as to the extent of his authority must determine at his own risk and peril whether particular acts are within that authority, and power to deal in a certain way with commercial paper is not to be enlarged by construction to permit the doing of other though somewhat similar things (31 Cyc. 1383), yet where, as is alleged in the present case, the maker of a draft, without protest, sanctioned the disregard of stipulations which limit the authority of his agent, by paying without question a number of drafts where these limitations were disregarded, it would at least present for the consideration of a jury the issue as to whether or not the maker of the draft had not waived the conditions by which he had primarily deemed it necessary to restrict the authority of his agent. It appears in this case that shortly before the giving of this draft the agent, J. E. Poore, had repeatedly given similar drafts in which practically the same language was used as in the draft sued on, and to which no statement or bill of lading was attached, and that these drafts, upon presentation, were paid by the Germain Company. Granting that under the principles laid down in the *Claflin* case, supra, the Camden County Bank paid the first draft at its peril, and even that some risk attended the taking of the second draft, the implication of a waiver would gradually strengthen with each succeeding payment by the Germain Company, until it might become practically certain, by renewed and repeated payments of Poore's drafts from which statements and bills of lading were absent, that this restriction upon its agent's authority had been entirely removed.

One who deals with a special agent should examine his authority. Civil Code, § 3593. He must determine at his own risk whether the particular act to be done is within the authority of the agent. But these principles do not subvert the uniform principle (as applicable to agency as to anything else) that one may waive anything, provided the effect of the waiver is not in contravention of sound public policy or the law of the land. Where one knows that the contract made by his agent is without or beyond the scope of his authority, the contract will not be binding upon his principal. *Outcault Advertising Co.* v. *National Furniture Co., 7 Ga. App.*

150 (66 S. E. 480); *Hudson* v. *Prudential Life Insurance Co.,* 122 *Ga.* 847 (50 S. E. 1000). But, under the provisions of section 3593 of the Civil Code, the principal is bound by all the acts of his agent within the scope of his authority, and when a principal, repeatedly and without question, pays drafts drawn by an agent whose authority was originally limited, paying them without regard to the previous limitation upon the authority of the agent, it may authorize the inference that the previous limitation upon his authority has been altogether removed. Furthermore, it is well settled that a principal can not ratify in part and repudiate in part. If, indeed, the Germain Company, in paying the previous drafts, ratified the purchase by Poore of the cross-ties loaded at Sadler's Creek, and paid drafts on account of this purchase without statements or bills of lading having been attached to the drafts, it would be estopped to repudiate payment of this draft, because it must ratify or repudiate the transaction as a whole. We do not lose sight of the fact that the rule which requires one dealing with an agent to act at his own risk and peril should be most stringently construed when the transaction is one involving the giving of commercial paper by an agent, and we bear in mind that the occasional recognition of a note, made or indorsed by an agent, or the chance payment, for some particular reason, of one draft drawn by an agent, might not be enough to establish the authority of the agent, though in such circumstances as these, it might afford some evidence on the subject. 31 Cyc. 1381 (2). A bill of lading attached to the draft now before us, being a symbol of the property covered thereby, and in a sense the equivalent of the delivery to the consignee, would have given the Germain Company consideration and afforded them protection in the payment of the draft which they may have lost, but the amendment alleges that the delivery of the ties was to be made at a place where there was no common carrier, and of course no bill of lading could be issued. The natural answer to this allegation of course would be that if no bill of lading could be attached, then no draft could be drawn. But if the further allegations of the amendment are true, the Germain Company, probably being aware of the conditions at Sadler's Creek, and knowing that bills of lading could not be obtained, but still desiring to buy cross-ties, authorized the agent to make drafts for their payment. Whether this is true or not, the bank had the right to infer, from

its course of dealings with the agent, in paying other drafts stated to be practically identical in terms with the one now involved, that the previous limitation upon Poore's authority had been removed, and that the attaching of bills of lading and statements to the drafts was immaterial, at least so far as concerned the cross-ties being loaded at Sadler's Creek. So far as the condition requiring that a statement be attached is concerned, it might be within the power of a jury to find that the word "a/c ties loading at Sadler's Creek" was the statement elsewhere referred to in the draft. But we base our ruling as to both the statement of account and the bill of lading upon the proposition that the allegations of the petition as amended are sufficient to set forth such a course of dealing as would estop the defendant from denying that its agent had the authority to draw the draft, even though neither statement nor bill of lading was attached thereto.

The case is practically ruled by the decision of this court in *Fitzgerald Oil Co.* v. *Farmers Oil Co.*, 3 *Ga. App.* 215 (59 S. E. 713). The question is not one merely of the authority of the agent to draw a particular draft, but as to whether, if the agent was in the first instance required to draw a draft accompanied by other papers indicating the receipt of certain property, the latter requirement had not, in the particular instance now before us, been waived. Under the ruling in *Trigg Candy Co.* v. *Emmett Shaw Co.*, 9 *Ga. App.* 359, 360 (71 S. E. 679), the allegation of the original petition, that Poore had authority to sign the draft, would have been sufficient if only the authority of the agent was in question, and the requirements as to the statement and the attaching of the bill of lading had been complied with. But, as was said in the *Fitzgerald Oil Co.* case, supra, "the authority of an agent need not necessarily be proved by an express contract, but may be proved by the habit and course of business of the principal. If a man holds out another as his agent, and thus induces persons to deal with him as agent, the principal is estopped as to such third persons from denying his agency. If the Germain Company, by repeatedly paying the drafts drawn by Poore, about the same time, with no bill of lading attached, authorized the Camden County Bank to believe that Poore was a general agent instead of a special agent, it can not now complain. As was said by Huffcutt in his work on Agency (2d ed.), 129: "The sole inquiry in such a case is whether there

has been a holding out of the agent as one having authority, and whether the third person, acting with average prudence and good faith, was justified in believing that the agent possessed the necessary authority. If so, the principal must bear the risk, because he has held out the agent as possessing the authority which he seems to possess, and is not in a position to maintain that third parties should know that what appears to be true is not true."

The court did not err in overruling the demurrer.

*Judgment affirmed.*