## 23090. ARONOFF *v.* WOODARD *et al.*

SUTTON, J. 1. Laborers have a general lien upon the property of their employers, liable to levy and sale, for their labor, which is superior to all other liens, except liens for taxes, the special liens of landlords on yearly crops, and such other liens as are declared by law to be superior to them. Civil Code (1910), § 3334.

2. The lien in favor of laborers on the personalty of their employers, created by the foregoing section of the code, takes precedence over mortgages, even mortgages given to secure the payment of the purchase-money, and even to those created prior to the contract for labor, and all other liens except those specially provided for and specially declared by law to be superior. *Mathews* v. *Fields,* 12 *Ga. App.* 225 (77 S. E. 11); *Georgia Loan &c. Co.* v. *Dunlop,* 108 *Ga.* 218 (33 S. E. 882); *Bradley* v. *Cassels,* 117 *Ga.* 517 (43 S. E. 857).

3. A laborer, under the foregoing section of the code, is one who performs manual labor. However, when an employee's regular duties include actual manual labor, he may have a lien under this section although he performs other services for his employer which are not manual labor. *Cole* v. *McNeill,* 99 *Ga.* 250 (25 S. E. 402); *Rountree* v. *Brown,* 22 *Ga. App.* 79 (95 S. E. 375); *Bluthenthal* v. *Bennefield,* 127 *Ga.* 444 (56 S. E. 517, 119 Am. St. R. 350).

4. Accordingly, a waitress in a restaurant, who waits on the customers when they come into the restaurant to eat, takes their orders, and serves them with their meals, and, after they finish eating, cleans the table and takes the soiled dishes to the kitchen, and who also cooks some, sweeps the floors of the restaurant, changes table linen, scrubs counters, washes mirrors, dusts, and unpacks canned goods, is a laborer within the meaning of the foregoing section of the code, as one entitled to the benefit of its provisions, even though she frequently acts as cashier, purchases some of the groceries, and makes entries in the books of the business.

5. Where a wife permits her husband to manage and control her property or allows him so to deal with it as to induce others to believe that it is his property or that he is acting as her authorized agent, such facts are sufficient to establish the agency in favor of persons who deal with him in such belief, where she knows that her husband is so managing and controlling her property and makes no objection thereto. 30 C. J. 851; *Wylly* v. *Collins,* 9 *Ga.* 223; *Byne* v. *Corker,* 100 *Ga.* 445 (28 S. E. 443); *Pinkston* v. *Cedar Hill Nursery &c. Co.,* 123 *Ga.* 302 (51 S. E. 387); *Home Fertilizer Co.* v. *Dickerson,* 12 *Ga. App.* 149 (76 S. E. 1040); *Swearingen* v. *Virginia-Carolina Chemical Co.,* 19 *Ga. App.* 658 (91 S. E. 1050). In the instant case the wife owned a restaurant, and her husband hired a waitress, the laborer involved herein. The husband stayed at the restaurant and ran it. He paid off the help, and ran the business

in such a manner as to indicate that he owned it. The wife came to the restaurant daily and saw the waitress at work there. The wife made no objection to this waitress as to her husband running the business, and made no objection as to this waitress working there. In these circumstances, in so far as this waitress was concerned, the husband was the duly authorized agent of the wife to run the business; and the court did not err in refusing a nonsuit on the ground that the property was that of the wife and it was not shown that this waitress was hired by or working for the wife.

6. Applying the foregoing principles, the court did not err in permitting the waitress to testify that she demanded her past-due wages of the husband, that she was employed by him, that he apparently ran the restaurant, and that all her dealings in working in the business were had with the husband. This evidence was not erroneously admitted because the waitress was working for the husband and not for the wife, and because it was necessary for her to demand her past-due wages of the wife before she could institute her laborer's lien proceeding.

7. It was not error for the court to admit in evidence a written acknowledgment of indebtedness to this waitress, signed by the husband, to wit: "We O U up to 2-2-32, $50.45. Peacock Café by Chris Blaine." In so far as this waitress was concerned, Chris Blaine was acting as the duly authorized agent of the wife in running the business.

8. A fair construction of the evidence in this case demanded a finding that the waitress's regular duties consisted of manual labor, but that in the course of such duties she performed other duties, clerical in their nature; and the court did not err in charging the jury that "in contemplation of law the plaintiff, Miss Woodard, was a laborer, and was entitled to file a laborer's lien upon the property of her employer for wages only, and you are directed, in so far as that issue is concerned, to find in favor of Miss Woodard," even though such a charge was tantamount to the direction of a verdict in favor of the waitress on this issue.

9. While the court incorrectly said, during a colloquy over the admission of evidence, "Well, we have the evidence here by this witness [meaning the waitress] that she was operating the café for Mrs. Blaine," it was not a violation of section 4683 of the Civil Code of 1910. *Chapman* v. *State*, 23 *Ga. App.* 359 (98 S. E. 243), and cit.

10. The court did not err in charging the jury that one of the material issues in the case was whether or not the husband was the authorized agent of the wife in running the restaurant, that if he was, and as such employed the waitress, the wife would be bound by his agreement and her property would be subject to the laborer's lien, but that. if he was not her agent, but was acting only in his own behalf when he employed the waitress, the wife would not be liable for his contract of hiring, and the waitress could not recover; and that the question of agency was one for the jury to determine. The evidence fully authorized this instruction.

11. At the conclusion of the evidence and before argument of counsel, the intervenor moved the court to direct a verdict. In his motion for a new trial the intervenor assigns error on this ruling. It has been repeatedly ruled that this court will not reverse a lower court for refusing to direct a verdict. *Ford* v. *Blackshear Mfg. Co.*, 140 *Ga.* 670 (79 S. E. 576); *Roberts* v. *Groover*, 161 *Ga.* 414 (131 S. E. 158).

12. The evidence authorized the verdict, and, no error of law appearing, this court will not reverse the judgment overruling the motion for a new trial. *Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*

DECIDED OCTOBER 14, 1933.

*Fred D. Neel, William A. Ingram,* for plaintiff in error.
*William T. Townsend,* contra.