MEEKS *v.* WITHERS.

No. 10968.   FEBRUARY 21, 1936.

*Hamilton Kimzey* and *Herbert B. Kimzey,* for plaintiff.

*B. F. Davis* and *C. M. McClure,* for defendant.

GILBERT, Justice. The real gist of the question involved in the present case is not so much whether the husband was originally authorized by the wife to act as her agent, but whether, after he had arranged for the loan from Withers, she ratified the agreement and became primarily liable by reason of signing the notes and mortgages. "The wife is a feme sole as to her separate estate, unless controlled by the settlement. Every restriction upon her power in it must be complied with; but while the wife may contract, she may not bind her separate estate by any contract of suretyship nor by any assumption of the debts of her husband, and any sale of

her separate estate, made to a creditor of her husband in extinguishment of his debts, shall be absolutely void." Code of 1933, § 53-503. In addition to these restrictions, a wife may not sell her property to her husband without first obtaining an order of court. Beyond these, she is at liberty to contract with the same freedom as a man. The only restriction alleged to have been violated in the present case is that which provides that a wife may not bind her separate estate by a contract of suretyship. Mrs. Meeks contends that the only contract which she intended to sign was one of suretyship for the purchase of machinery by her husband; that as to the other elements of the contract she was not aware that she was incurring, and did not intend to incur, any obligation; and that as to her the notes and mortgages are void because given to secure her husband's debt. It appears that she entered into none of the preliminaries, but that B. F. Davis, an attorney, being solicited by her husband, approached W. S. Withers to obtain a loan with the property of Mrs. Meeks as security. Subsequently she executed two promissory notes and a mortgage containing a power of sale in case of default in payment of the debt. Neither Withers, the lender, nor Davis claims to have had any negotiations with Mrs. Meeks personally. She denies that any one was authorized to seek a loan for her, and she disclaims any benefit from the transaction. That transaction contemplated a loan of $650 by Withers, out of which $100 was to be deducted for certain concrete-mixing machinery, and also a prior indebtedness against the property, in favor of a third person, was to be discharged. The net amount was represented by a check payable to Mrs. Meeks, which was cashed by the husband on his indorsement after it had been delivered to him by Davis acting for Withers. As to the actual signing of the notes and mortgage, Mrs. Meeks testified that she thought she was signing only as surety in the purchase of machinery. She does not, however, contend that any imposition or duress was practiced upon her at the time she signed the papers. The justice of the peace, who witnessed her signature, testified that the husband merely stated to Mrs. Meeks, "Jane, here are these papers for you to sign," and that she complied by making her mark after the justice of the peace had written her name. Although she had stated that she could not sign her name, and that "he," presumably the husband, knew it, there was no protest. No request

was made for explanation of their contents, and none was offered at that time.

It is not shown that Mrs. Meeks was under any legal disability. To support her claim she testified that she was a woman of 71 years of age, unaccustomed to transacting business, but on cross-examination she stated: "I worked hard for my home. I ran a restaurant for seven years. I kept boarders for four years. . . I worked in Capps Cotton Mills for eighteen months." A total of nearly thirteen years of business life thus revealed, the jury was authorized to conclude that out of her experience, though unable to write, she was not ignorant of such business papers as notes, mortgages, and the like. They were also authorized to find that she had acquired enough experience to distinguish between the figures $100 and $650, and that from her experience prudence would have suggested that, if she did not know what she was doing, she make some inquiry of the contents of the papers. Her testimony does not go to the extent of swearing that her husband had led her to believe that she was signing only as surety for a machinery debt. She merely says, "I thought I had signed as security for one hundred dollars." She does not say that she understood that the husband or any one else was to sign as principal. "The very essence of the contract of suretyship is that there must be some one liable for the payment of the debt, the principal and the person alleged to be surety; and it follows that where one person only is shown to have signed the note sued on, that person must necessarily be the principal." *Saxon* v. *National City Bank,* 169 *Ga.* 784, 788 (151 S. E. 501). The evidence shows only one signature. But if the husband had practiced duress or fraud upon her, unknown to the lender, the latter would not be bound by such an act in the absence of knowledge thereof, and if the contract was one such as the wife could enter into. As was said in *Schofield* v. *Jones,* 85 *Ga.* 816 (11 S. E. 1032), quoted in *Saxon* v. *National City Bank,* supra, "Where the creditor, at the time of creating the debt, really intends in good faith to extend credit to the woman and not the man, and the consideration, as the writings are constructed, passes legally and morally to her, and she executes writings adapted to the nature of the transaction, which purport to bind her for the debt as her own, then whatever may be the private understanding between her and her husband, unknown to the creditor and of

which he has no reasonable grounds for suspicion, as to how or by whom the consideration is to be enjoyed, the writings are to be treated as embracing the true substance of the actual contract on both sides. Nor does it matter in such case that the creditor's negotiations are all with the husband. The latter is competent to represent the wife as her agent, and this agency, like any other, if not actually created beforehand, may be manifested by ratification. If the wife executes papers which by their nature import a ratification of the previous negotiations, and the acceptance of the terms and stipulations incorporated in the writings themselves, she is no less bound than if she had negotiated in person." On the principle that the lender is protected where he does not know of any improper practices by the husband, see *Johnson* v. *Leffler,* 122 *Ga.* 670 (3) (50 S. E. 488) ; *Skinner* v. *Braswell,* 126 *Ga.* 761 (55 S. E. 914) ; *Garretl* v. *Thornton,* 157 *Ga.* 487 (2) (121 S. E. 820) ; *Pendergrass* v. *New York Life Insurance Co.,* 163 *Ga.* 671 (2) (137 S. E. 36).

Nor would the fact that the wife remained in possession of the property be evidence of any imposition by the husband or be sufficient to put the lender upon inquiry as to any fraud perpetrated by the husband upon the wife. *Pendergrass* v. *New York Life Insurance Co.,* supra. Having ratified the contract by signing the necessary papers and delivering them to the husband (if the jury found such ratification), it was not incumbent upon the lender to trace the funds which were entrusted to the husband. It appears that the check, though made payable to the wife, was not indorsed by her, but was in some way cashed at the bank on the husband's indorsement. That is no concern of the lender. If it did not represent any understanding between the wife and the husband, it was her right to take the necessary action. The prior loan which was to be discharged was shown by the evidence to have been canceled of record. Of this the wife, owning the property, received the benefit. The bill of sale for the machinery is shown to have been made in her name. When the check for the machinery not delivered was issued, it was made payable to the husband; but that one detail is not sufficient to overthrow the whole nature of the transaction, and the wife still has her remedy. Now, was that which the wife ratified, if her conduct constituted ratification, a contract which under the law she could enter into? It is not con-

tended that the husband was in debt to Withers before the papers were executed. There was not, under the circumstances, any reason why she could not borrow money on her own account. "While a wife can not bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband, nor sell her property in extinguishment of his indebtedness, she may nevertheless, upon her own responsibility and voluntarily, enter into a contract for borrowing money and give her note therefor and a mortgage upon her property to secure its payment, and such a contract will be binding on her though the party with whom she contracts may know she intends to use the borrowed money for her husband's benefit." *Johnson* v. *Leffler,* supra; *Ginsberg* v. *Peoples Bank,* 145 *Ga.* 815 (89 S. E. 1086); *Jackson* v. *Reeves,* 156 *Ga.* 802 (4) (120 S. E. 541); *Braswell* v. *Federal Land Bank,* 165 *Ga.* 123 (139 S. E. 861); *Garrett* v. *Thornton, Saxon* v. *National City Bank,* supra. It is shown in some of the cases just cited that the wife may borrow money even for the purpose of paying her husband's debt, provided that the lender is not the original creditor. She may borrow money and give it to her husband. On the question of ratification it may also be observed that after the death of her husband, and after the maturity of the notes, Mrs. Meeks endeavored to borrow money to pay off the Withers loan. She offers as an explanation that Withers was threatening to sell the property, and that, though not recognizing personal liability, she wanted to save it. Such an effort on her part is not inconsistent with her claim of ignorance as to knowingly signing any papers except as security for the machinery purchase, but it is a circumstance which the jury was authorized to consider in determining whether or not she in fact ratified the contract arranged by her husband and Withers. Under all the evidence the verdict was authorized, and the court did not err in overruling the motion for a new trial. The special grounds argued by counsel for the plaintiff in error are that the court erred in admitting testimony of B. F. Davis and E. L. McConnell as to the circumstances under which Mrs. Meeks signed papers on a previous occasion when a loan was made by W. A. Worsham on the same property, which was paid off by Withers under the contract sub judice. It is urged, with citations of authority, that agency may not be established by mere proof of agency in a similar transaction on a previous occasion. As stated in the

foregoing part of this opinion, the real gist of the case is whether or not Mrs. Meeks ratified what had been agreed to by her husband and Withers. The second transaction related to the same property, and followed so closely upon the first and was so similar in nature, that we think the circumstances of the first were admissible on the question of ratification in the present case.

*Judgment affirmed. All the Justices concur, except Russell, C. J., who dissents.*

BELL, J., concurs specially.