SHOUP *v.* ELLIOTT; *et vice versa.*

Nos. 13845, 13846.  September 10, 1941.
Rehearing denied October 14, 1941.

*G. S. Peck* and *John M. Slaton,* for plaintiff in error.

*Augustine Sams* and *Julius A. McCurdy Jr.,* contra.

GRICE, Justice. It is the contention of counsel for the plaintiff in error that there was only one contract, confirmation whereof was expressed in the papers indorsed by and signed by Mrs. Shoup, and that she pledged her own property and credit to secure the obligation of her husband. On the other hand it is contended that the initial written agreement between Mrs. Elliott and Mr. Shoup was abandoned, and that a separate and distinct contract was entered into between the parties, and that this latter amounted to an original undertaking on the part of Mrs. Shoup which was binding upon her. Parties may by mutual consent abandon a contract so as to make it not thereafter binding. *Evans* v. *Cherokee Iron Co.,* 73 *Ga.* 459 (3). This principle has been applied to an executory contract for the sale of land. *Manley* v. *Underwood,* 27 *Ga. App.* 822 (110 S. E. 49). A contract may be rescinded by agreement, although the evidence thereof may be by conduct and not by words. 12 Am. Jur. § 431. When a new contract in relation to the sale and purchase of this land was entered into by Mrs. Elliott and Mr. Shoup and another, this could ordinarily have no other effect than evidencing the fact that the first agreement between Mrs. Elliott and Mr. Shoup had been rescinded by mutual agreement, or abandoned. The judge submitted to the jury the question whether or not there had been an abandonment of the original agreement

signed by Mrs. Elliott and Mr. Shoup, and there was evidence sufficient for them to find that it had been abandoned. If such was the case, then in no sense could it be said that at the time of the transaction now under investigation Mrs. Elliott was the creditor of Mr. Shoup. While a married woman may not contract a debt of suretyship that will bind her, she may as an original undertaker become liable on a debt incurred by her, although she derives no benefit therefrom. *Freeman* v. *Coleman*, 86 *Ga.* 590 (12 S. E. 1064); *Tuggle* v. *Duke*, 42 *Ga. App.* 634 (157 S. E. 224); *Saxon* v. *National City Bank of Rome*, 169 *Ga.* 784 (151 S. E. 501). The ruling in *Gibson* v. *General Motors Acceptance Corporation*, 46 *Ga. App.* 201 (2) (167 S. E. 203), is sound, to wit, that "Where a married woman enters into an unambiguous written contract whereby she becomes the owner of personalty, and agrees to pay a stipulated price therefor, she is bound by her obligation as purchaser, if the seller committed no fraud upon her nor knew of any committed by the husband." This is so because, as stated in the same decision, "While a married woman can not bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband, . . she may nevertheless contract, and by an original undertaking on her part may bind her separate estate, for the purchase-price of property, even though she may, with the knowledge of the seller, turn the property bought over to her husband." "Where the creditor, at the time of creating the debt, really intends, in good faith, to extend the credit to the woman and not the man, and the consideration, as the writings are constructed, passes legally and morally to her, and she executes writings adapted to the nature of the transaction which purport to bind her for the debt as her own, then, whatever may be the private understanding between her and her husband, unknown to the creditor and of which he has no reasonable grounds for suspicion, as to how or by whom the consideration is to be enjoyed, the writings are to be treated as embracing the true substance of the actual contract on both sides. Nor does it matter, in such case, that the creditor's negotiations are all with the husband. The latter is competent to represent the wife as her agent, and this agency, like any other, if not actually created beforehand, may be manifested by ratification. If the wife executes papers which by their nature import a ratification of the previous negotiations, and the acceptance of the terms

and stipulations incorporated in the writings themselves, she is no less bound than if she had negotiated in person." *Schofield* v. *Jones,* 85 *Ga.* 816, 819 (11 S. E. 1032). See *Meeks* v. *Withers,* 181 *Ga.* 787 (184 S. E. 604), and cit. The law will not permit a wife to bind her separate estate by any contract of suretyship, or by any assumption of the debts of her husband, and any sale of her separate estate made to a creditor of her husband in extinguishment of his debts shall be absolutely void. Code, § 53-503. This provision of our law will be enforced regardless of the form of the transaction or the cloak that enfolds it, if in reality the contract is based on a mere colorable transaction the purpose of which is to make the wife, to all intents and purposes, the husband's surety. See the authorities cited in *Magid* v. *Beaver,* 185 *Ga.* 669, 677-8 (196 S. E. 578).

The judge fairly and fully charged the jury on the contentions of the parties and the law on the controlling issues in the case. He submitted to them the question whether this transaction constituted but an effort to bind Mrs. Shoup's separate estate by indirection; whether or not, if such was the purpose, Mrs. Elliott had notice sufficient to reasonably put her on inquiry, that is, inquiry which would have led to notice that at the time Mrs. Shoup indorsed and delivered her note to Mrs. Elliott they were given in assumption of a pre-existing debt of the husband. He charged them that the sales agreement between the husband and Mrs. Elliott created a liability on the part of Mr. Shoup to Mrs. Elliott, and would constitute an indebtedness within the meaning of the law that a wife can not sell her property in extinguishment of her husband's indebtedness. He submitted to them also the question whether an original agreement between Mr. Shoup and Mrs. Elliott had been abandoned, and whether or not a separate and distinct contract had been entered into between Mrs. Elliott and Mrs. Shoup. He instructed them to ascertain whether the old contract was abandoned, and whether the contract as finally executed was one which Mrs. Shoup made with an understanding of what was being done, and intended to bind her separate estate for the payment of her own debt, and not that of her husband. A careful perusal of the judge's charge demonstrates that he gave the plaintiff in error the benefit of her every contention. An examination of the evidence discloses that the jury were authorized to find against the plea.

864

·The special grounds of the motion have been examined and have been dealt with in the headnotes. There was no error in overruling the motion for a new trial.

*Judgment affirmed* on the main bill of exceptions; cross-bill dismissed. *All the Justices concur.*