## 49294. INTERSTATE FINANCIAL CORPORATION v. APPEL.

PANNELL, Presiding Judge.

Appellee, Norma Appel, brought a complaint against the appellant on a promissory note designated as Count 1 of her complaint. Count 2 of her complaint is not involved in the present appeal. Her motion for summary judgment as to Count 1 of the complaint was sustained and the defendant-appellant appeals to this court.

The appellant, Interstate Financial Corporation, was wholly owned by Morton P. Tauber. Appel Associates, Inc., was a corporation wholly owned by Tauber (37-1/2%), Arnold Balser (12-1/2%) and Donald Appel, husband of appellee (50%). There were some conflicts in the evidence,

however, these conflicts do not seem material to a proper decision of this case. That evidence most favorable to the defendant, Interstate, was contained in an affidavit of Tauber and depositions of Balser, which gave substantially the same picture of the transaction, as contended by the defendant. We quote from Tauber's affidavit:

"At all times material hereto, I owned 37-1/2% of the outstanding stock of Appel Associates, Inc. ('Appel Associates'), a Georgia corporation which was engaged in the business of purchasing manufacturers close-outs in various dry goods and selling them to retailers. Arnold Balser owned 12-1/2% of the outstanding stock of Appel Associates and Donald Appel owned 50% our [of] the outstanding stock of the company. Mr. Appel was President of the company. Arnold Balser and I were Secretary and Treasurer of the company, however, I do not remember the specific office which each of us held.

"I am the president and sole stockholder of Interstate Financial Corporation ('Interstate'), a Georgia corporation organized for the purpose of factoring accounts receivable of Appel Associates. There was a written factoring agreement between Interstate and Appel Associates, a true, correct and complete copy of which is attached hereto and incorporated herein by this reference as Exhibit 'A'. Pursuant to that agreement, Interstate charged interest to Appel Associates at the rate of 16% per annum (1-1/3% per month) on the factored accounts. Appel Associates is, at this time, indebted to Interstate under the factoring agreement in an amount exceeding $80,000.

"In addition to the financing provided Appel Associates by Interstate, Arnold Balser, Donald Appel and I each made individual loans to the company. By September 30, 1971, accumulated unpaid loans from Donald Appel to Appel Associates amounted to $12,185.47. The largest loan, $8,900, was made in August, 1971. Mr. Appel stated on numerous occasions to me that most of the money loaned by him to the company had actually come from his wife, Norma Appel. No interest was paid on these individual loans.

"Sometime during September or October of 1971, I

don't remember the exact date, Donald Appel requested that $10,000 of the funds loaned by him to Appel Associates be transferred by bookkeeping entries to show a loan in that amount from his wife to Interstate and in turn to show a loan pursuant to the factoring agreement in that amount from Interstate to Appel Associates. A promissory note was to be issued by Interstate to Donal[d] Appel's wife paying 12% interest on the outstanding principal balance, with the interest to be paid quarterly. The loan from Interstate to Appel Associates was to be under the factoring agreement, so that 16% interest was to be charged Appel Associates. After determining that Appel Associates had sufficient accounts receivable to secure an additional $10,000 in funds from Interstate under the factoring agreement, I agreed to make the entries in the books of both companies which were necessary to comply with Donald Appel's request. Subsequently, the $10,000 note which is the subject matter of this lawsuit was issued by Interstate. Interstate did not receive any funds from Norma Appel, Donald Appel or anyone as consideration for the issuance of the note. The note was issued by Interstate solely as an outgrowth of conversations between Donald Appel and me. Neither Interstate nor I had any dealings whatsoever with Norma Appel.

"Toward the end of 1971, Appel Associates experienced an acute cash shortage. However, the company did not have sufficient accounts receivable to permit Interstate to advance additional funds to it under the factoring agreement. When Donald Appel was informed of this, he agreed to return the note issued by Interstate to Norma Appel so that the entire Norma Appel 'loan transaction' could be canceled, thereby freeing the Appel Associates accounts receivable which secured the underlying 'loan' from Interstate to Appel Associates. Those accounts receivable were sufficient to secure an additional $10,000 cash loan from Interstate to Appel Associates under the factoring agreement. Based on Donald Appel's promise that he would return the note, Interstate advanced Appel Associates $10,000 on January 4, 1972, and the entire Norma Appel 'loan transaction' was deleted from the books and records of

Appel Associates. The cancellation of the transaction occurred so soon after it had been agreed to that it was not necessary to delete any entries from the books and records of Interstate, because entries setting up the transaction had not yet been made in the Interstate books. No interest was ever paid by Interstate on the Norma Appel note.

"Donald Appel failed to return the Norma Appel note as he had promised. However, Appel Associates experienced numerous problems during 1972 and the immediacy of those problems was such that the Norma Appel 'loan transaction' was forgotten by me until this lawsuit was commenced."

Donald Appel testified that some of the funds advanced to Appel Associates belonged to his wife. His wife testified she advanced no funds to her husband but that the note sued upon was a gift from her husband. Donald Appel denied that he agreed to the cancellation of the note sued upon.

Appellant contends this evidence authorized a finding that Donald Appel acted as agent for his wife and with her consent in investing her funds in the note sued upon. And that, under these circumstances, appellant had a right to assume this agency continued to exist and appellant was authorized to rely on the assumption that Donald Appel acted as her agent in agreeing the note sued upon be canceled so that appellant could extend credit to Appel Associates, Inc., of which Appel, Tauber and Balser were sole stockholders. Appellant relies upon the following cases: *Salters v. Pugmire Lincoln-Mercury,* 124 Ga. App. 414 (184 SE2d 56); *Pinkston v. Cedar Hill Nursery &c. Co.,* 123 Ga. 302, 304 (51 SE 387); *Meeks v. Withers,* 181 Ga. 787, 795 (184 SE 604); *Barrington v. Davis Jenkins & Sons,* 44 Ga. App. 682 (162 SE 642); *Aronoff v. Woodward,* 47 Ga. App. 725 (5) (171 SE 404); *Brogdon v. Hallman,* 119 Ga. App. 464 (3) (167 SE2d 673); *Gay v. Virginia-Carolina Chemical Co.,* 32 Ga. App. 720 (124 SE 364); *Burch v. Americus Grocery Co.,* 125 Ga. 153 (1) (53 SE 1008).

1. "Apparent authority is *power* which results from acts that *appear to third persons* to be authorized by the principal." *Commercial Auto Loan Corp. v. Baker,* 73 Ga. App. 534, 535 (37 SE2d 636). "The authority of an agent in

a particular instance . . . may be established by the principal's conduct and course of dealing, and if one holds out another as his agent, and by his course of dealing indicates that the agent has certain authority, and thus induces another to deal with his agent as such, he is estopped to deny that the agent has any authority which, as reasonably deducible from the conduct of the parties, the agent apparently has." *Equitable Credit Corp. v. Johnson,* 86 Ga. App. 844, 847 (72 SE2d 816); *Glover v. Summerour,* 165 Ga. 513 (141 SE 211). This doctrine of apparent authority "is based upon the principle that where one of two innocent parties must suffer from the wrongful act of another, the loss should fall upon the one who, by his conduct, created the circumstances which enabled the third party to perpetrate the wrong and cause the loss." *Commercial Credit Corp. v. Noles,* 85 Ga. App. 392, 396 (69 SE2d 309); Code § 37-113. Thus, an estoppel is worked against the principal to deny that there was authority (*Germain Co. v. Bank of Camden County,* 14 Ga. App. 88, 80 SE 302) and the principal "will not be permitted to prove that the agent's authority was, in fact, less extensive than that with which he apparently was clothed." *Commercial Credit Corp. v. Noles,* 85 Ga. App. 392, 396, supra. In order for this estoppel to occur it must appear that the third party dealt with the agent in reliance upon the authority which the principal has apparently conferred upon him (*Piedmont Operating Co. v. Cummings,* 40 Ga. App. 397, 149 SE 814) and it must appear that "a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent had authority to perform a particular act and deals with the agent upon that assumption." *Commercial Credit Corp. v. Noles,* 85 Ga. App. 392, 396, supra.

Assuming, without deciding, that upon application of the above rulings the evidence would authorize a finding in behalf of the defendant that the husband acted as agent of the wife and with her consent in *investing* her funds and acquiring the note sued upon; it does not necessarily follow that the agency of the husband to invest the funds of the wife in a promissory note payable to her would carry with it the implied or incidental or

apparent authority *to cancel the note payable to the wife* so as to permit the promisor to lend the amount of the face of the note to a corporation, the stock in which was held wholly by the husband, the sole stockholder of the promisor and another, all of whom took part in the arrangements. There was no question of error or mistake in making the wife the payee in the note, but on the contrary, this was exactly what was intended by all the parties participating in the transaction.

The cancellation of the note was of no benefit to the wife-payee. Nor was the right to cancel the indebtedness one incidental to the performance of the agency to invest the wife's funds in the note sued upon. While an agent's authority once established shall be construed to include all necessary and usual means for effectively executing it (Code § 4-301) and this rule applies where the agency is created for general as well as for special purposes (*Prudential Ins. Co. v. Franklin,* 51 Ga. 496 (180 SE 869)), this does not extend the agent's authority beyond what is necessary or incidental to the authority given. In *Columbus Show Case Co. v. Brinson,* 128 Ga. 487, 489 (57 SE 871) the court held that "A general agent is one who is authorized to do all acts connected with a particular trade, business, or employment," while a special agent was "authorized to do one or more specific acts in pursuance of particular instructions, or within restrictions necessarily implied from the act to be done." For example, an agency to sell does not necessarily or impliedly or incidentally carry with it the authority to collect. *Walton Guano Co. v. McCall,* 111 Ga. 114 (36 SE 469); *Miles v. Smith,* 37 Ga. App. 619 (141 SE 314).

Even if the agent has authority to collect this would not give either apparent, implied or incidental authority to cancel the note without payment, and usually in cash. See, *Armour Fertilizer Works v. Maddox,* 168 Ga. 429 (148 SE 152); *Osborn v. War Finance Corp.,* 39 Ga. App. 42 (145 SE 917). We, accordingly, are of the opinion that the trial court did not err in rendering summary judgment for the plaintiff for the principal and interest sued for. Leading cases relied upon by the plaintiff are not controlling on the question here presented. In *Barrington v. Davis Jenkins & Sons,* 44 Ga. App. 682, supra; *Pinkston v. Cedar Hill*

*Nursery &c. Co.,* 123 Ga. 302, supra; *Burch v. Americus Grocery Co.,* 125 Ga. 153, supra; *Aronoff v. Woodward,* 47 Ga. App. 725, supra; *Gay v. Virginia-Carolina Chemical Co.,* 32 Ga. App. 720, supra; questions of general agency to manage a business or farm and acts incidental thereto were involved, or a mere continuation of the identical agency or acts. *Meeks v. Withers,* 181 Ga. 787, supra, involved the ratification of the acts of a husband by a wife; *Salters v. Pugmire Lincoln-Mercury,* 124 Ga. App. 414, supra, involved the question of the admissibility and probative value of testimony as to agency.

2. The answer admits the receipt of the notice of attorney fees but denies its sufficiency. The notice was sufficient to comply with Code § 20-506. The summary judgment for attorney fees was authorized.

*Judgment affirmed. Webb, J., concurs. Evans, J., concurs specially.*

DECIDED MARCH 18, 1975 — REHEARING DENIED APRIL 2, 1975.

*Kaler, Karesh & Frankel, Jerry L. Sims,* for appellant.

*Karp & Karp, Barry A. Karp,* for appellee.

EVANS, Judge, concurring specially.

I concur fully in all that is set forth in the opinion of Judge Pannell.

I feel it proper to add that according to certain allegations and contentions, it could be concluded that Appel Associates, Inc., was given credit for $10,000 by Interstate Financial Corporation, upon the expectation that Appel would procure the cancellation of the note for $10,000 held by his wife against Interstate Financial Corporation, but only the wife could order cancellation of her note, which she has not done. The difference between Interstate Financial Corporation and Appel Associates, Inc., as to the alleged $10,000 credit given Appel Associates, Inc., and which Interstate contends now that Appel is not entitled to is not now before us for decision and could be reached and settled only in some other form of litigation.