### 69672. FRONTIER CONTRACTING COMPANY, INC. v. L.S.R., INC.
(330 SE2d 414)

McMURRAY, Presiding Judge.

On or about April 20, 1981, plaintiff L.S.R., Inc. sold a laser surveying unit to defendant Frontier Contracting Company, Inc. Because the unit which defendant purchased was not in production at that time, plaintiff provided defendant with a prototype of the unit. The prototype was to be used by defendant until the unit which it purchased was delivered. In late May 1981 the manufacturer of the unit asked plaintiff to return the prototype. Accordingly, plaintiff's branch manager contacted defendant's vice-president and told him that plaintiff would bring a substitute unit to defendant's jobsite. When plaintiff's branch manager arrived at the jobsite he picked up the prototype and left a second unit with defendant. In so doing, plaintiff's representative informed defendant's job superintendent that the second unit was more expensive than the prototype. The superintendent signed a delivery ticket for the replacement unit. It contained the following language: "You are responsible for loss or damage to this equipment until it is returned to L.S.R., Inc. and checked in by us. Value of above equipment $7,200.00."

When plaintiff's branch manager left the replacement unit with defendant, defendant's superintendent informed him that defendant had been having trouble with security because of attempts to break into defendant's jobsite trailer. He added that there was no need to

worry about the replacement machine because he had been taking the prototype home in the evenings. The following morning defendant's job superintendent telephoned plaintiff's branch manager and told him that the replacement unit had been stolen from defendant's construction trailer.

Plaintiff brought this action against defendant seeking the value of the replacement unit. The case was tried by the court sitting without a jury. After hearing evidence, the trial court determined that plaintiff was entitled to judgment against defendant in the amount of $7,355. This appeal followed. *Held*:

1. Defendant contends that it was unaware the replacement unit was more expensive than the prototype and that, therefore, it did not knowingly assent to the bailment of the replacement unit. In this connection, defendant acknowledges that its job superintendent was informed of the value of the replacement unit. It argues, however, that its job superintendent had no authority to accept property more valuable than the prototype. Defendant's contention is without merit.

" ' "Apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." American Law Institute, Restatement, Agency 2d, p. 30, § 8, p. 103, § 27. Accord, *Patterson v. Southern R. Co.*, 41 Ga. App. 94 (151 SE 818); *Firemens Fund Ins. Co. v. Davis*, 42 Ga. App. 49, 61 (155 SE 105); *Mason v. Rice*, 47 Ga. App. 502 (170 SE 829); *Planters Rice Mill Co. v. Merchants Nat. Bank of Savannah*, 78 Ga. 574, 585 (3 SE 327); *Burch v. Americus Grocery Co.*, 125 Ga. 153 (53 SE 1008); 3 Am. Jur. 2d, 475, § 73.' Further, an estoppel arises as against the denial of agency when a principal places a purported agent in a position of apparent authority so that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent has the authority to perform a particular act and deals with the agent upon that assumption. See *Commercial Credit Corp. v. Noles*, 85 Ga. App. 392, 396 (69 SE2d 309). See also *Arrington & Blount Ford v. Jinks*, 154 Ga. App. 785, 786-787 (1) (270 SE2d 27)." *Jester v. Hill*, 161 Ga. App. 778, 781 (1) (288 SE2d 870).

In view of the evidence presented at trial that defendant's superintendent frequently signed for items delivered to the jobsite and that defendant's vice-president knew plaintiff was going to take the replacement unit to the jobsite, we conclude that plaintiff was justified in assuming that the job superintendent had the authority to accept the replacement unit on behalf of defendant. Accordingly, defendant is estopped to deny the apparent authority of its job superintendent.

2. The trial court correctly determined that the bailment mutu-

ally benefitted each of the parties and that, therefore, the defendant was under a duty to exercise ordinary care and diligence to protect the replacement unit. *Electro-Medical Devices v. Urban Medical Services*, 140 Ga. App. 776, 777 (1) (232 SE2d 106). The transaction benefitted defendant because it was given possession of the replacement unit and an opportunity to use it. Plaintiff also benefitted from the transaction because it was able to comply with the manufacturer's request to return the prototype.

3. "In all cases of bailment, after proof of loss by the bailor, the burden of proof is on the bailee to show proper diligence." OCGA § 44-12-44. We cannot say the factfinder erred in determining that defendant failed to carry its burden of showing that it exercised the requisite degree of care. There was evidence that the defendant had been experiencing burglary problems; that its job superintendent had been taking the prototype home with him for safekeeping; and that plaintiff's representative advised the superintendent that he should similarly take the replacement unit home with him because it was more expensive than the prototype. Obviously, this was not done because the replacement unit was stolen from defendant's construction trailer the very first night it was in defendant's possession.

*Judgment affirmed. Banke, C. J., and Benham, J., concur.*

DECIDED APRIL 3, 1985.

*James O. Wilson, Jr.*, for appellant.
*John H. Watson*, for appellee.